AMERICAN MOTORS SALES CORPORATION, A DELEWARE
CORPORATION, APPELLANT, V. B. O. PERKINS, DOING
BUSINESS AS PERKINS NEW & USED CARS, ET AL.,
APPELLEES.

251 N. W. 2d 727

Filed March 23, 1977. No. 40822.

Douglas F. Duchek and Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Wagner & Johnson, Ginsburg, Rosenberg, Ginsburg & Krivosha, and Ronald Rosenberg, for appellee Perkins.

John R. Doyle, for appellee Nebraska Motor Vehicle Industry Licensing Board.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an appeal from a determination that American Motors Sales Corporation, hereinafter referred to as AMSC, is required to continue the franchise of B. O. Perkins, doing business as Perkins New & Used Cars, of Columbus, Nebraska, beyond the termination date set out in the franchise agreement between the parties. We reverse.

AMSC alleges four assignments of error. (1) The Nebraska Motor Vehicle Industry Licensing Act, sections 60-1401.01 to 60-1435, R. R. S. 1943, as amended, is unconstitutional in that it unduly restricts the right of freedom to contract. (2) The membership composition of the Nebraska Motor Vehicle Industry Licensing Board constitutes a denial of due process. (3) The act is in direct conflict with the Federal Automobile Dealers Franchise Act, Title 15 U. S. C., sections 1221 to 1225. (4) The decision of the licensing board was not supported by competent evidence.

Perkins became a franchise dealer of American Motors automobiles in 1969, for a 6-month probationary period. In November of 1969, he was given another probationary period until May of 1970. In May of 1970, he was put on a standard 2-year franchise. This was renewed for an additional 2-year period with the franchise to terminate automatically on May 19, 1974. AMSC decided not to renew the franchise but to terminate it. In 1972, however, the Nebraska Motor Vehicle Industry Licensing Act, sections 60-1401.01 to 60-1435, R. R. S. 1943, required the approval of the Nebraska Motor Vehicle Industry Licensing Board before the termination or discontinuance of a franchise.

On July 24, 1974, AMSC filed its application with the licensing board pursuant to section 60-1424, R. R.

S. 1943, to terminate the franchise. It continued the franchise in effect pending the decision of the board.

In its application, AMSC alleged that Perkins failed to discharge his obligations under the franchise agreement in the following respects: (1) He failed to develop sales potential; (2) he failed to maintain a showroom for new vehicles; (3) he failed to provide an additional service stall; (4) he failed to employ even one salesman; (5) he failed to submit monthly financial statements; (6) he failed to stock sufficient new cars; (7) he failed to advertise and promote American Motors products; and (8) he failed to upgrade service equipment and the service department.

A hearing was held before the board on October 18, 1974. On March 27, 1975, the board entered an order finding it had jurisdiction and denied the application for failure of AMSC to establish good cause for termination, as required by section 60-1420, R. R. S. 1943.

Pursuant to section 84-917, R. R. S. 1943, AMSC petitioned the District Court for Lancaster County for judicial review. The Attorney General of the State of Nebraska and the Nebraska Motor Vehicle Industry Licensing Board were also made parties in the District Court. On March 31, 1976, the District Court entered an order affirming the decision of the licensing board. AMSC prosecutes this appeal from that order.

The act under consideration provides that before a manufacturer may discontinue or terminate a franchise or establish an additional franchise in the same community, the manufacturer must file an application with the Nebraska Motor Vehicle Industry Licensing Board. § 60-1424, R. R. S. 1943. The board is composed of the Director of Motor Vehicles, who is the chairman, and nine members. The nine members include three new motor vehicle dealers, two used motor vehicle dealers, one motorcycle

dealer, one trailer dealer or a combination motor vehicle and trailer dealer, one factory representative, and one member of the general public. § 60-1402, R. R. S. 1943. Of the nine members, seven are franchise holders.

A franchise may be terminated or discontinued only when the manufacturer proves good cause exists and shows that another franchise will become effective in the community unless the community will not support a franchise. § 60-1420, R. R. S. 1943. The manufacturer has the burden of proof on these issues. § 60-1427, R. R. S. 1943.

If the manufacturer is permitted to terminate or discontinue a franchise and is further permitted to withdraw from that community, it cannot later enter into a franchise in the community except upon a showing of a change in circumstances. § 60-1421, R. R. S. 1943.

To establish an additional dealership in a community, the manufacturer is required to demonstrate that there is good cause for the additional dealership, and further that it is in the public interest. § 60-1422, R. R. S. 1943.

Section 60-1429, R. R. S. 1943, provides that the following are not good cause for the termination or discontinuance of a franchise or the establishment of an additional franchise: (1) The manufacturer's desire for further sales penetration of the market; (2) change of ownership or executive management of a dealership unless the manufacturer proves substantial detriment to the distribution of its products in the community; and (3) the refusal to purchase or accept delivery of products or services not ordered by the franchisee.

In determining whether good cause has been shown for the termination or discontinuance of a franchise the board is to consider the amount of business transacted by the franchisee; the investment made by the franchisee and the permanency of

the investment; whether disruption of the business of the franchisee would be injurious to the public welfare; whether the franchisee has adequate service facilities, equipment, parts, and qualified service personnel; whether the franchisee refuses to honor the manufacturer's warranties; and the failure of the franchisee to substantially comply with the requirements of the manufacturer which the board finds reasonable and material or bad faith of the franchisee in complying with such requirements. § 60-1433, R.R.S. 1943.

AMSC in its first two assignments attacks the validity of the act. This action was initiated by AMSC. True, the law requires a manufacturer desiring to terminate a franchise to file an application with the board for that purpose. Two courses of procedure were open to AMSC. It could have directly contested the constitutionality of the act in the courts, or it could have invoked the jurisdiction of the board under the act. It adopted the latter procedure.

While there may be serious questions about the franchise termination portions of the act, under our law it is not before us. AMSC, having invoked the jurisdiction of the board, could not reserve the constitutional issue and proceed with the action. We have repeatedly held that a litigant who invokes the provisions of a statute may not challenge its validity. He may not seek the benefit of it, and at the same time and in the same action question its constitutionality. State v. Wells, 197 Neb. 584, 249 N. W. 2d 904 (1977).

We next consider appellant's fourth assignment, which we believe is determinative of the question herein. The decision of the licensing board was not supported by competent evidence. The record is conclusive. Perkins has never met the terms of the franchise agreement. The record supports a determination that AMSC proved Perkins failed to dis-

charge his obligations under the franchise agreements in the particulars alleged by it.

It is undisputed that Perkins was and is a very successful used car dealer. He has failed, however, to develop his sales potential as a new car dealer. Considering the criteria set out in section 60-1433, R. R. S. 1943, the board should have sustained the application of AMSC.

The record does not indicate that Perkins changed his facilities in any way to conduct a new car operation, or materially increased his investment to do so. This seems to have been one of the major points of contention between the parties. Perkins has never maintained a showroom for new vehicles. He has failed to provide an additional service stall. He has never employed a new car salesman. He has failed to submit monthly financial statements. He does not stock sufficient new cars to promote the operation of the franchise. He has failed to advertise the American Motors products. He has taken no steps to upgrade his service equipment or his service department. He has failed or refused to stock necessary tools for the newest AMSC cars.

It is very evident that the decision of the Nebraska Motor Vehicle Industry Licensing Act as applied by the board freezes AMSC into a wholly unsatisfactory situation. A successful used car dealer uses the franchise to supplement his operation rather than to develop the franchise potential for the benefit of both the parties to the franchise agreement. We find the decision of the board was arbitrary and capricious and unsupported by competent and sufficient evidence.

The signing of a franchise agreement by the dealer is certainly a promise to the manufacturer that he will use his best endeavors to promote the manufacturer's products. This necessarily implies adequate facilities and at least one salesman devoting his time and attention to the promotion of the

manufacturer's product. We feel the record demonstrates that AMSC gave Perkins every opportunity to upgrade his operation to realize the sales potential for the manufacturer's cars in the area he served. The automobile industry is a highly competitive field and an automobile manufacturer should have the right to bargain for and insist upon proper representation from its authorized dealers.

The testimony of the dealer on cross-examination was that he is not going to expand his facilities. He has informed AMSC he is not going to take any more stock cars, but only place retail or sold orders. It seemed apparent from his testimony that he was only interested in junior line vehicles which appear to be in demand.

It is apparent to us that the licensing board in no way attempted to deal with the real question at issue herein: Whether Perkins had met the obligations of the franchise in the past, and what his intentions were for the future. The record demonstrates that he has not met the terms of the franchise in the past, and had no intention of meeting its terms in the immediate future.

For the foregoing reasons, we reverse the judgment of the District Court affirming the Nebraska Motor Vehicle Industry Licensing Board. We remand the cause with directions to grant the application of AMSC and terminate the B. O. Perkins franchise upon the establishment of another franchise in the Columbus, Nebraska, area.

REVERSED AND REMANDED WITH DIRECTIONS.