CHRYSLER MOTORS CORPORATION, A CORPORATION, APPELLANT, V. THE NEBRASKA MOTOR VEHICLE INDUSTRY LICENSING BOARD; R. JAMES PEARSON, MEMBER AND CHAIRMAN; HERBERT G. ANDREWS; MARLIN O. ARMBRUSTER; FOREST F. COMBS; FRANCIS HANNA; ROBERT B. KRAMER, SR.; WALTER R. LOUIS; JULIUS NOVAK; DALE F. SAILORS; and DONALD DROUD, MEMBERS OF SAID BOARD; AND GILMAN MOTOR COMPANY, A CORPORATION, AND STATE OF NEBRASKA, APPELLEES.

274 N. W. 2d 862

Filed January 30, 1979. No. 41718.

Denzel R. Busick of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellant.

James R. Hancock of Hancock & Shaver, for appellee Gilman Motor Co.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

Plaintiff, Chrysler Motors Corporation, appeals from the order of the Nebraska Motor Vehicle Industry Licensing Board (board) denying plaintiff's application to terminate the Dodge dealer franchise of defendant, Gilman Motor Company, a corporation (Gilman), of Scottsbluff, Nebraska.

On December 12, 1975, plaintiff filed with the board an application to terminate Gilman's franchise alleging that Gilman had a continuous history of unsatisfactory sales performance, failed to maintain competitive facilities, failed to comply with its franchise agreements, and that the public (consumer) is harmed thereby. § 60-1424, R. R. S. 1943. After a full evidentiary hearing, the board on June 9, 1976, found no good cause had been shown and plaintiff's application was denied.

Pursuant to section 84-917, R. R. S. 1943, plaintiff appealed to the District Court for Lancaster County, Nebraska. Issues were joined, and upon hearing on the record, including the full transcript of the board hearing, the District Court affirmed the order of the board.

Plaintiff assigns as error: (1) The decision was not sustained by the evidence and it is contrary to law. (2) The board's decision was arbitrary and capricious. Other errors were assigned, but not argued. Our de novo review, section 84-918, R. R. S. 1943, is limited in this case to a determination of whether the District Court and the board applied the proper criteria and if there was substantial evidence to support the findings and orders of the board. The 20's, Inc. v. Nebraska Liquor Control Commission, 190 Neb. 761, 212 N. W. 2d 344.

In this proceeding to terminate the franchise of a motor vehicle dealer, pursuant to sections 60-1420 to 60-1435, R. R. S. 1943, the franchisor has the burden to prove both good cause for termination and that upon termination another franchise in the same line-make will become effective in the same community.

Gilman is a family owned business incorporated in 1964, having been an authorized dealer in Dodge autos and trucks in Scottsbluff, Nebraska, since 1931. Glen Gilman, the present corporate vice president and general manager, has been active in the business since 1949. In 1964 a 1-year Term Sales Agreement

was executed whereby Gilman's franchise was continued and Gilman agreed to make improvements in the physical plant, maintenance, and in sales performance. Full compliance was never reached, although this agreement was regularly renewed through 1969. In 1970 Chrysler and Gilman entered into a Direct Dealer Agreement for the sale of Dodge cars and trucks. In 1972 there was a similar Direct Dealer Agreement for the sale of Dodge Colt compact cars. Both of these contracts were in force at the time of these proceedings.

Plaintiff also manufactures a line of companion Chrysler and Plymouth cars. Scottsbluff does not now have a Chrysler-Plymouth agency. The last two attempts to establish such a line by a dealer in Scottsbluff failed. In 1975 Gilman requested the Chrysler-Plymouth line be combined with the Gilman Dodge agency. Chrysler refused. There is no competent, specific evidence in the record that plaintiff would provide another effective dealer franchise in Scottsbluff.

The present Gilman physical plant was built in stages beginning in 1947 at West 27th Street between Avenue D and E, in a busy commercial area, including a used car lot display area, showroom area, parts department, new car display area, and offices. In 1974 plaintiff requested Gilman to either build a new facility, or update its present buildings, preferably on the edge of Scottsbluff. Although Gilman had the financial capabilities to do so, it declined for the reason that the required additional investment was not warranted. There were no reliable estimates as to such cost, but the record suggests a minimum of $200,000 would be required. A part of the evidence includes photographs of the Gilman buildings, both exterior and interior, and photographs of six local, major competing auto retail facilities. The present Gilman facilities are both competitive and adequate.

Throughout the past 15 years, there was continual dissatisfaction on the part of plaintiff with both the physical appearance of the Gilman facility and the failure of Gilman to improve its gross sales by "penetrating the market." Gilman regularly agreed to improve the physical facilities by window washing, painting, redecorating, sweeping, and generally improving the physical appearance; however, Gilman never fully complied with plaintiff's standards and requirements. Gilman also agreed that it would increase its efforts in penetrating the market.

Included in the 1970 and 1972 agreements was the provision that Gilman would attain minimum sales responsibility (MSR) which was a substitute formula to their prior reference to "penetrating the market." Briefly MSR is the number of cars that a dealer was required to sell to equal the product acceptance in terms of sales obtained in the Chrysler-Denver zone area. The basic element for MSR is the number of new car registrations obtained from the county records as collected and prepared by the R. L. Polk Co., a national commercial company providing such statistics for manufacturers. There is conflict in the record as to the reliability of such data.

Plaintiff claims that the combined MSR for Gilman for the period 1971-75 shows progressive percentage decline as follows:

| Year | MSR | Sales | Accomplishment |
|------|-----|-------|----------------|
| 1971 | 124 | 103 | 83.1% |
| 1972 | 147 | 116 | 78.9% |
| 1973 | 198 | 125 | 63.1% |
| 1974 | 224 | 141 | 62.9% |
| 1975 (11 mo.) | 180 | 91 | 50.6% |

Gilman's evidence was that its share of the new cars sold and delivered in the Scottsbluff area is about the same during this period.

Section 60-1429, R. R. S. 1943, provides that good cause to terminate a franchise cannot be established

on the sole fact that the franchisor desires further penetration of the market.

Although the record shows that Gilman neglected physical appearances, it also shows: (1) Gilman Motor Company and its family owners enjoy a strong financial credit reputation in the Scottsbluff community. (2) It was competitive in the retail auto and truck sales market. (3) It maintained an above average inventory of parts and repairs and it gave priority to service and repairs of both autos sold by it and of such service to other customers. (4) The customer service was directed to encouraging repeat business and Gilman had a reputation for providing good service. (5) The Gilman employees were qualified to provide the respective services required of them. (6) Glen Gilman, as manager, devoted about 80 hours a week to the business affairs of Gilman. (7) The advertising program included a 60-second spot radio commercial each morning. Although Gilman's advertising program was not in strict compliance with Chrysler's standards, it was adequate. (8) Gilman had been a continuing successful stable representative of Chrysler as a Dodge dealer for 41 years. (9) Other Dodge dealers in the Denver zone also failed to meet their MSR requirements.

Plaintiff argues that American Motors Sales Corp. v. Perkins, 198 Neb. 97, 251 N. W. 2d 727, is dispositive in this case. That claim is without merit. In Perkins there was a total failure and refusal on the part of Perkins to meet even the minimal franchise requirements of a new car dealer as to facilities, inventory, supplies, and sales performance.

From a review of the entire record, we conclude that the issue of good cause was properly considered by the board as provided in section 60-1433, R. R. S. 1943, that the decision of the board was neither arbitrary nor capricious, and there is substantial competent material evidence to support its decision.

The order of the District Court was correct and is affirmed.

AFFIRMED.