104 So.2d 62 (1958)
CITY OF MIAMI, a municipal corporation, Dade County, Florida, and Randall N. Christmas, as Mayor of the City of Miami and as a member of the City Commission; George DuBreuil, James HIGH, Otis Shivers, B.E. Hearn, composing and as members of the City Commission of the City of Miami, Dade County, Florida, a municipal corporation, and Arthur Darlow, as Director of the Department of Engineering, City of Miami, a municipal corporation, Dade County, Florida, Appellants,
v.
John Charles GIRTMAN, Ralph M. Girtman, Katherine Girtman Johnson, Zelma E. Schmid, George H. Girtman, individually and George H. Girtman, d/b/a Flagler Parking Service, Appellees.
No. 57-191.
District Court of Appeal of Florida. Third District.
June 12, 1958.
Rehearing Denied July 16, 1958.
*64 George S. Okell, Sr., and John H. Smith, Miami, for appellants.
John E. Cicero and Charles Girtman, Miami, for appellees.
CARROLL, CHAS., Chief Judge.
This is an appeal from a summary final decree entered against appellants, who were defendants in the circuit court. The plaintiffs in the suit were the owners of property on which they operated a parking lot in downtown Miami. The defendants were the City of Miami, its mayor, the city commissioners and the city engineer.
The cause was heard by the trial court on plaintiffs' motion for summary final decree, on the pleadings consisting of the complaint and defendants' motion to dismiss and answer, without supporting affidavits (other than an affidavit to show non-violation of the fictitious name law), and without evidence other than that which was disclosed through certain exhibits to the pleadings.
It appeared therefrom that plaintiffs were owners of a parcel of land approximately 75 feet wide, extending through a block, with one end fronting on Flagler Street and at the other end fronting on Southwest First Street. On the Flagler Street end the property was located approximately 50 feet east of the city's Central Fire Station.
After removing a business building from the property in 1956, plaintiffs applied to the city on February 11, 1957, for permission to construct and use the property as a parking lot, and to so use it during an indefinite interval until they should again erect a building thereon. That application included an application to have ingress and egress for vehicular traffic in the operation of the parking lot both on Southwest First Street and onto Flagler Street. The application was heard and considered by the city commission of the City of Miami. The commission passed a resolution granting the permit for the parking lot, with ingress and egress on Southwest First Street only, and denying the application for ingress and egress on Flagler Street, because of traffic difficulties incident to the nearby fire station.
Acting on that permission, the plaintiffs constructed the parking lot and entered into business in March 1957. A month later, on April 12, plaintiffs reapplied for a permit for ingress and egress at the Flagler Street end of the parking lot. That application was made in the form of a letter addressed to the city engineer. The complaint alleged that he refused the application but the form or reason of his refusal was not shown on the record. He was empowered by an ordinance to approve applications for the location and construction of driveways prior to issuance of permits for construction of facilities requiring such driveways, and the validity of the ordinance giving him that authority was questioned in the trial court. We make no further comment relating to that ordinance because the plaintiffs' second application to the engineer was not appropriate under the ordinance since the facility for which the driveway was required had already been constructed, and because the same application as previously made through him had been considered by the city commission and denied by the commission in February, as a condition of issuing the permit for the parking lot.
The plaintiffs did not proceed to take the matter before the city commission, on that second application, but filed their suit for declaratory decree in which they challenged the ordinance under which the city engineer was authorized to approve applications, and in which they also challenged the action of the city in having denied to them their requested access to and use of the Flagler Street entrance for their parking lot business. The allegations of the complaint in this connection were general and were in part as follows:
"IV. Your petitioners allege, that the denial of said application imposed an illegal burden on the petitioners, is *65 an invasion of the property rights of the petitioners and is confiscation of the petitioners' property without due process of law, that the issuance of such a permit as applied for is a property right to which the petitioners are entitled, that said City of Miami Ordinance No. 5555 is unconstitutional as applied to the property of the petitioners in that it is unreasonable, arbitrary and confiscatory, and in that said ordinance is an ungoverned delegation of power and discretion by the legislative body of the City of Miami, that the defendants have unlawfully and arbitrarily discriminated against your petitioners in refusing to issue said permit; the actions of the defendants is illegal, unconstitutional, and void for that the denial of such a permit constitutes and amounts to an unreasonable taking of property without due process of law in violation and contravention of the constitutions of the United States and the State of Florida [U.S.Const. Amend. 14; F.S.A.Const. Declaration of Rights, § 12]."
The city relied on its showing, by attaching to its answer the resolution and excerpts from the minutes of the meeting of the city commission in February where the matter had been considered, that the city had by resolution granted the use of the parking lot with permission for vehicular ingress and egress only at the Southwest First Street end, and, in the exercise of its police power, had disapproved and denied the application to use the Flagler Street end of the property as an entrance and exit to the parking lot. As the basis for such denial, the resolution authorizing the parking lot contained the following:
"Whereas, it is detrimental to the health, safety, and welfare of the citizens of the City of Miami to permit ingress and egress to said lot from West Flagler Street as said entrance would interfere with the emergency fire-fighting apparatus egressed from Station I, located at West Flagler Street and Miami Court;"
The court in granting summary final decree ruled that the city had no power or authority to deny the plaintiffs the right to the use of the Flagler Street entrance for their parking lot business, and granted a peremptory order to the city and to the city officials to issue such a permit to the plaintiffs. Those provisions of the decree read as follows:
"3. All duly elected or duly appointed officers and officials of the City of Miami do not have the power or authority (under the City Charter or its Ordinances or Resolutions), to grant [sic], or deny, or withhold, any permit that would allow the plaintiffs ingress and egress (from parcel one as set forth in plaintiffs' complaint) on Flagler Street, for use of such premises for parking lot purposes.
"4. That the plaintiff Flagler Parking Service, has duly applied for a permit for ingress and egress from said parcel one on Flagler Street, and that the proper officials of the City of Miami are directed forthwith to issue said permit."
In thus holding that the city was without power or authority to effectively regulate driveways for the passage of vehicular traffic across the public sidewalk and into the main street of the city in the downtown area, the learned chancellor was in error.
The appellees argued here, as was held by the chancellor, that the action of the city commission, in denying their request to construct and maintain a driveway into Flagler Street for use in the operation of their parking lot, was unreasonable and amounted to a denial of access to which they were entitled under the law, and they argued that this amounted to depriving them of a valuable property right and a denial of due process.
*66 In the case of City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368, 375-377, 128 A.L.R. 350, the Supreme Court of Florida, with reference to police power, said as follows:
"While constitutional guaranties cannot be transgressed, it is well settled law that the possession and enjoyment of all rights are subject to the police power and persons and property are subject to restraints and burdens necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am.Jur. page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. See 11 Am.Jur. page 1009, par. 268. * * *
* * * * * *
"* * * A city, as the arm of the state, has in the exercise of the police power a wide discretion in determining what precautions in the public interest are necessary and appropriate under the circumstances. Its exercise of the police power will not be interfered with by the courts in the absence of a clear abuse of discretion, unless it is manifestly unreasonable and oppressive, for it is not within the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations to pass ordinances relating to objects within the proper domain of the police power. Municipal bylaws and ordinances undertaking to regulate are, however, subject to investigation by the courts with a view to determining whether they are lawful exercises of the police power or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the right to carry on a lawful business, to make contracts, or to use and enjoy property. Where the legislative enactment is manifestly unreasonable and arbitrary and offends against prohibitions within the Federal or state Constitution, it becomes the duty of the judiciary to declare the ordinance invalid."
In the present case there was involved the question of public safety, which is a proper field for the exercise of police power, extending as it does to all matters wherein the morals, health, comfort, safety and welfare of the public are involved. Not only is the governing body entitled to exercise police power for those purposes, but it is bound to do so, and will be delinquent in its duty if it fails to recognize the need and impose those restrictions and regulations which police power demands. It follows that when within appropriate limits the city exercises its power, personal as well as property rights must yield and be subject thereto. In considering the matter of police power, as applied by municipalities, it must not be overlooked that in congested and heavily populated areas problems are presented which call for application of regulations which may not be required throughout the state generally, particularly with respect to matters of public health and safety.
Appellants' brief directs our attention to Chapter 15341, Special Acts, Laws of Florida, 1931, which added to the charter of the city the following provision:
"The City of Miami shall have power to pave, grade, curb, repave, macadamize, re-macadamize, lay out, open, close, vacate, dis-continue, widen and otherwise improve streets, alleys, avenues, boulevards, lanes, sidewalks, *67 parks, promenades and other public highways or any part thereof, and to hold liens therefor as hereinafter provided; to construct and maintain bridges, viaducts, subways, tunnels, sewers and drains, and to regulate the use of all such highways, parks, and public grounds and works; to prevent the obstruction of such sidewalks, streets and highways; abolish and prevent grade crossings over the same by railroads; regulate the operation and speed of all cars and vehicles using the same, as well as the operation and speed of all engines, cars and trains of railroads within the City; to regulate the service to be rendered and rates to be charged by buses, motor cars, cabs and other vehicles for the carrying of passengers and by vehicles for the transfer of baggage."
That provision of the charter confers broad powers on the city for the regulation and control of the streets, and while no mention is made therein of regulation of driveways onto streets as such, their relation to the streets, and to traffic on the streets and sidewalks is of such obvious character and importance that they are recognized as an incident to street use, and municipal corporations have implied power to regulate them, as being a power necessarily incident to those expressly granted regarding the streets. See Pure Oil Company v. City of Northlake, 10 Ill.2d 241, 140 N.E.2d 289, 291.
Distinction must be drawn between private access and the use by an abutting owner of a driveway into the street for the purposes of a business on the property. In the present case the plaintiffs were seeking to construct a driveway over a public sidewalk, which was a part of the public street, for the passage of vehicular traffic to and from their parking lot onto Flagler Street. To so use the street for business is not a matter of right. But if it could be considered to be a matter of right, it is one which must yield to such regulations and restrictions as the city commission finds to be necessary for the safety of the traveling public. Wood v. City of Richmond, 148 Va. 400, 138 S.E. 560; See 39 C.J.S. Highways § 141, pp. 1080-1081; Antieau, Municipal Corporation Law, Vol. 1, § 9.12, pp. 609-610.
The owner's convenience or inconvenience, and whether the restriction may hinder or prevent profitable operation of the owner's business on the property, are questions which are material and to be weighed against the public necessities, but which are ineffective when the latter predominate. Thus, in Town of Tilton v. Sharpe, 85 N.H. 138, 155 A. 44, 46, it was said:
"* * * the test of the reasonableness of the proposed use is to be found, not by inquiring whether such use is essential to the profitable transaction of any particular business on his lot, but in answer to the inquiry whether such use would be fraught with such unusual hazard that the danger to the traveling public would be out of proportion to the detriment to the owner of being deprived of it. The convenience or necessity of the owner constitute but one side of the question. Upon this, the character of the use and the accessibility of his lot at other points are material factors. For instance, it would be difficult to conceive of a situation where an owner should be deprived of access to his lot by persons on foot at any point on a bounding street however extensive his frontage; on the other hand, if an owner should propose to propel freight or vehicles with great force or speed across a congested sidewalk at grade, such use would be clearly unreasonable even though it was the only accessible entrance to his lot. Between such extremes a great variety of situations may arise in which the relative rights of the owner and the traveling public can be determined by no set *68 rules or formulas, but in which the reasonableness of the proposed use must be determined by weighing its unusual dangers to the public against the inconvenience and disadvantage to the owner arising from its denial. * * *."
In the present case on the hearing before the city commission on plaintiffs' application for the permit to construct and operate the parking lot, which included application for driveways onto both the Southwest First Street and the Flagler Street frontages, it is revealed by the resolution and the minutes of the proceedings that two of the commissioners were opposed to granting any permit for a parking lot at that location because of traffic conditions, and that the majority of three which granted the permit did so only upon denying the request for entrance and exit of vehicles at the Flagler Street end. Thus the city, through its city commission, had considered and ruled adversely to the application for the driveway on Flagler Street, and nothing new in a material sense was presented on the reapplication, which reapplication the plaintiffs did not press to the extent of again appearing before the commission.
The city commission was acting as an administrative and legislative body. As such it was clothed with the power to determine upon such regulations as it found to be essential in the exercise of its police power, under the facts and circumstances which were before it with reference to the location and the conditions involved. The city commission must be accorded the superior opportunity to know the circumstances, and must be granted the presumption that its official acts were taken with due regard for the rights of all parties. Its conclusion and action in denying the request for the driveway onto Flagler Street must not be disturbed by a court unless it is made plain to be seen that the restriction or regulation bears no reasonable relation to the health, comfort, safety or general welfare of the public. City of Miami Beach v. Texas Co., supra, 141 Fla. 616, 194 So. 368, 376, 128 A.L.R. 350.
Here there was no trial at which all the facts might have been produced. The limited record does not show the facts or circumstances relating to public safety or welfare which motivated the decision of the city commission, other than the disclosure by the report of the meeting of the commission that it was concerned with traffic conditions and possible interference with the operation of the fire department out of the nearby Central Fire Station, being questions bearing on safety.
What has just been said, was inserted here to show that while the area and extent of the rights of the property owners on the one hand, and of the city, for the public, on the other hand, have been outlined hereinabove, such a regulatory procedure by the city is not closed to question. If the owners can show that the city's initial denial of vehicular access to and from the parking lot on Flagler Street, at the downtown location in question, had no reasonable relation to the object to be obtained thereby in the interest of the health, comfort, safety or general welfare of the public, in light of the vehicular and pedestrian traffic conditions prevailing there, and the proximity and operation of the Central Fire Station, and other such factors, then the plaintiffs should have an opportunity to do so, and to test their facts against those which would be submitted in that connection on behalf of the city. An examination of the present complaint shows that it fails to state facts upon which that burden could be expected to be carried.
Accordingly, the summary final decree appealed from is reversed with directions to dismiss the complaint. If facts can be alleged to state a cause of action under the applicable law, the plaintiffs should be allowed to amend their complaint.
Reversed with directions.
HORTON and PEARSON, JJ., concur.