528 So.2d 921 (1988)
PARADYNE CORPORATION, Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION and Irwin H. Miller, Sonya Miller, Philip Benjamin and Marilyn Benjamin, Appellees.
No. 87-269.
District Court of Appeal of Florida, First District.
June 24, 1988.
Rehearing Denied July 20, 1988.
*922 John R. Bush and Douglas S. Gregory of Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, for appellant.
Maxine F. Ferguson, Tallahassee, for appellee Dept. of Transp.
Bruce Marger and David A. Thompson of Goldner, Reams, Marger, Davis, Piper & Bartlett, P.A., St. Petersburg, for appellees Millers & Benjamins.
SMITH, Chief Judge.
Paradyne Corporation (Paradyne) appeals a final order of the Department of Transportation (DOT), revoking its road connection permit and requiring Paradyne to submit a proposed redesign of the connection. *923 The order provides that in the event Paradyne fails to submit an acceptable redesign, Paradyne's property will be subjected to a redesign of the connection mandated by DOT which would include construction of a 250-foot drive leading to the connection to be used both by Paradyne and adjoining landowners, the Millers and Benjamins (M & B), which drive would be mostly located on Paradyne's private property. We affirm that portion of DOT's order revoking Paradyne's permit, because Paradyne failed to construct the connection in accordance with the 1981 permit granted by DOT. We also hold that DOT can require Paradyne to submit a redesign of the connection due to the present safety hazards at the existing connection. § 335.18(1) and (3), Fla. Stat. (1985). However, we disapprove that portion of DOT's order requiring Paradyne to construct a drive on its private property for the use and benefit of other abutting landowners as an invalid exercise of the state's police power. Accordingly, we affirm the order in part, reverse in part, and remand for further proceedings.
Paradyne and M & B own adjacent properties on the south side of State Road 688, known as Ulmerton Road, a major east-west arterial road in Pinellas County. Paradyne operates a business on its property employing many people, while M & B's property, lying to the west of Paradyne, is at least partially undeveloped. Paradyne sought and obtained a permit in 1981 allowing access to Ulmerton Road at a light-controlled intersection. The traffic light is aligned with the north-south property line between Paradyne and M & B. The 1981 permit contemplated that the Paradyne and M & B properties have joint access to the light-controlled intersection by providing that the western side of the drive or access connection be constructed along the northern boundary of the properties beginning at a point approximately twenty feet inside M & B's eastern boundary line, thus providing a twenty-foot access to M & B's property, in addition to the portion of the connection extending eastward along the northern boundary of Paradyne's property. The connection was to be constructed on DOT's right-of-way, which extends thirty-eight feet from the berm of Ulmerton Road. However, as later determined in litigation which ultimately found its way to the appellate court, Paradyne Corp. v. Miller, 455 So.2d 432 (Fla. 2nd DCA 1984), the permit contained no provision regarding a 250-foot access road on the parties' private property. It is undisputed that Paradyne failed to construct the connection in accordance with the 1981 permit. Instead, Paradyne constructed the connection, as well as a private road on its property leading to it, by eliminating the twenty feet that would otherwise have served as a connection to M & B's property, with the result that only vehicles utilizing the Paradyne property would have access to the intersection. Thereafter, Paradyne refused to allow M & B to use the private road on its property to gain access to Ulmerton.
During the next several years, M & B sought relief as to its access problem in court. See, Paradyne Corp. v. Miller. However, in the interim, DOT determined that traffic conditions at the intersection had changed materially, necessitating a redesign and issuance of a new permit. The litigation between the parties then moved to the administrative forum when DOT, on March 31, 1986, issued a notice to show cause (NSC), prompting Paradyne to request a formal administrative hearing, in which M & B intervened. DOT charged in the proceedings below that the highway connection constructed by Paradyne was in violation of section 335.18(1) and (3), in that it was not constructed in accordance with the permit design plan, and that in its present state, the existing connection was causing undue disruption of traffic and creating safety hazards, necessitating a material redesign of the connection. DOT also required redesign of the intersection in accordance with a drawing which was identical to one prepared for M & B by Diaz-Seckinger & Associates, Inc. (DSA Group), in 1984.
The DSA redesign, which was prepared without input from Paradyne, proposes to alleviate traffic congestion due to the backup of vehicles turning left or southward *924 into the Paradyne parking lot during peak traffic hours, by construction of a dual or double stacking area, 350-feet in length, for the westbound approach on Ulmerton Road, and a widened receiving approach on the property to the south to accommodate the dual left-turning traffic. The DSA design also calls for two westbound turning lanes out of the Paradyne property. The median barrier for the westbound traffic on Ulmerton Road would need modification. The need for these changes and DOT's authority to order them is not in dispute in this litigation. However, in addition to these modifications the redesign also calls for a 250-foot joint access road to the connection to be located on the private properties of Paradyne and M & B, which would require approximately 22,700 square feet for a joint use area, with 13,950 square feet located on Paradyne's property and 8,750 square feet located on M & B's property. This litigation focuses primarily upon Paradyne's objection to having its property subjected to joint use by the adjoining landowner as a condition to maintaining Paradyne's access to Ulmerton Road.
After the administrative hearing, the hearing officer entered a final order in which she found that there is a need for a major redesign of the intersection and Paradyne's connection, due to the increased traffic entering and exiting Paradyne's property. She noted that there is no practical method of design that would allow two separate accesses for Paradyne's and M & B's use. The provision of separate accesses would create a five-lead intersection which would cause considerable traffic difficulties. DOT's traffic engineer would not approve the traffic signal operation which would be required if there were separate access roads ingressing and egressing the Paradyne and M & B properties.
The hearing officer concluded, based upon the undisputed evidence, that Paradyne did not construct its connection with Ulmerton Road in accordance with the schematic drawing attached to its original 1981 permit; and, consequently, that DOT would have the authority to either require compliance with the permit, deny Paradyne access, or require a redesign of the project. While Paradyne was amenable to constructing the connection in accordance with the original permit drawing, this was found to be no longer a viable solution to the problem, as the evidence supported the need for a major redesign of the intersection and Paradyne's connection due to the increased traffic entering and exiting Paradyne's property. Although the evidence did support a major redesign, the hearing officer concluded that DOT could not impose upon Paradyne the DSA Group design as there was insufficient evidence to demonstrate that either traffic congestion or safety hazards dictated any requirements regarding the design of Paradyne's private road, other than its width on or near the right-of-way. Further, she concluded that neither its location on Paradyne's private property, its length, or its use or nonuse by M & B was shown to constitute an impact upon traffic or safety considerations. She concluded that while DOT may be able to require that a permittee's receiving approach on private property be a certain length, width or configuration so as to allow the lighted intersection to be utilized as designed with regard to the flow of traffic, DOT could not designate the actual location or specification of the entire private roadway or require that a neighboring land owner have access to the private road.
DOT accepted the hearing officer's findings of fact but disagreed with some of her conclusions of law. Contrary to the conclusion of the hearing officer, DOT determined that subsequent to the issuance of the 1981 permit, traffic has increased on Ulmerton to a degree which necessitates a modification and redesign of the private road located on Paradyne's property, as well as a redesign of the connection and intersection, in order for the highway connection to meet the standards of section 335.18. In essence, DOT concluded that it could require Paradyne to construct a 250-foot joint use road on Paradyne's private property, which road would be shared with M & B, as a condition of maintaining a connection to Ulmerton Road. Accordingly, DOT revoked the driveway permit issued *925 to Paradyne in 1981, effective ninety days hence, giving Paradyne sixty days to present to the department for approval a design for a revised connection to Ulmerton which would allow access for both Paradyne and M & B and accommodate current traffic conditions in a safe and efficient manner. The order further provides that if within sixty days the department has not issued a revised permit based on plans submitted by Paradyne, the department shall issue a redesign permit for the Ulmerton Road intersection using the DSA Group design.
In its brief, Paradyne challenges virtually every aspect of DOT's final order, contending that DOT cannot revoke its permit, require a redesign, or impose upon it the DSA Group design. However, we discern that the primary issues presented for our determination are: (1) whether DOT may lawfully order the termination of Paradyne's present access connection to Ulmerton Road; and (2) whether DOT, in requiring Paradyne to construct a 250-foot joint use drive on its private property for the use and benefit of adjoining property owners as a condition to continued access to Ulmerton Road, is acting within the constitutional limits of its police power, and as a corollary, whether such a requirement amounts to an unconstitutional taking of private property for public use without just compensation.
As a general principle, the right of access to and from a public highway is one of the incidents of ownership or occupancy of land abutting thereon, and exists whether the fee to the way is in the public or in private ownership. However, this right is subject to regulation through the state's police power. 38 Am.Jur.2d, Highways, Streets, and Bridges, §§ 178-9 (1968); Annot., 73 A.L.R.2d 652 (1960). The right of access is one which must yield to such regulations as are necessary for the safety of the traveling public. City of Miami v. Girtman, 104 So.2d 62 (Fla. 3d DCA 1958). In fact, where alternate access from property is available, the state may deny a particular access to a highway or street so long as the denial of access has a reasonable relationship to the health, safety and welfare of the public. Id. However, courts will not usually allow government to absolutely prohibit any and all vehicular access to an abutter's property without compensation. Annot., 73 A.L.R.2d 652, at § 2. In keeping with the requirement that regulation of access must be in the public interest, it has been recognized that deprivation of access cannot be based upon a serving of the private interests of other abutters. Alan Construction Co. v. Gerding, 209 Md. 71, 120 A.2d 353 (1956).
DOT's statutory authority to regulate connections to roads on the state highway system is contained in section 335.18(1) and (3) which provide:
(1) The department shall regulate connections to roads on the State Highway System, as such connections are a significant contributor to vehicular accidents, congestion, and reduction in traffic-carrying capacity. If the traffic patterns, points of connection, roadway geometrics, or traffic control devices cause undue disruption of traffic or create safety hazards at existing connections, or are expected to cause such disruption or hazards at proposed connections, the department has the authority to deny the permit authorized in subsection (3) or to require redesign of a proposed connection at a specific location or redesign of an existing connection.
... .
(3) A permit from the department is required prior to the construction or alteration of any connection. The department has the authority to deny access to a road on the State Highway System at the location specified in the permit if the permittee fails to construct or alter the connection in accordance with the permit requirements.
We conclude, based upon our review of controlling statutes and the facts presented, including the undisputed evidence that Paradyne did not construct this road connection in accordance with the 1981 permit, that DOT has the right to revoke Paradyne's permit under section *926 335.18(3). The evidence supports the need for a major redesign of the intersection on Ulmerton Road and Paradyne's connection with that road due to the heavy amount of traffic entering and exiting Paradyne's property during peak morning and afternoon traffic periods. As a consequence, DOT has the authority to require Paradyne to submit a redesign of its connection which will accommodate the current traffic conditions in a safe and efficient manner under section 335.18(1). Further, DOT can properly require that any revised connection designed by Paradyne must allow access to Ulmerton for both Paradyne and M & B, since two separate accesses for Paradyne and M & B at this light-controlled intersection cannot safely be allowed to exist.
The key fact in this case, one which we find notably absent in Paradyne's discussion of the issues, is that the connection as originally designed in 1981 is "safe" only if utilized as a "joint use" access for vehicles entering and leaving both Paradyne's and M & B's properties. If not so used, it is unsafe and impractical from a traffic standpoint. That Paradyne has thus far been able to postpone the day of reckoning by failing to construct and utilize the connection in the manner originally intended is of no consequence in the resolution of this controversy. We find no basis in law or fact upon which to accept the premise, implicit in Paradyne's position on the issues, that it may now exercise rights superior to those conferred by the original permit. Here, the only offender is Paradyne, since it sought, obtained, and was apparently satisfied with the 1981 connection, which clearly contemplated access not only to Paradyne's property but to the adjoining property now owned by M & B. DOT's dereliction consists solely in its failure to intercede earlier when Paradyne failed to construct the connection as originally designed, and to either insist upon joint access and use by the adjoining owners, or a revocation of the connection permit. Notably absent from the record and argument is any contention by Paradyne of an irrevocable change of position by Paradyne in reliance upon an interpretation of the permit which is at variance with that of DOT and each court which has had occasion to consider the issue.
We hold, therefore, in the event that Paradyne is unwilling or unable to submit an acceptable design of this connection allowing joint access and accommodating the current traffic conditions in a safe and efficient manner, DOT may permanently close access to Ulmerton Road at this light-controlled intersection for safety reasons, and both Paradyne and M & B will be required to utilize their alternate available accesses to their properties. City of Miami v. Girtman, 104 So.2d 62 (Fla. 3d DCA 1958); see also Boese v. Salem, 40 Or. App. 381, 595 P.2d 822 (1979).
Notwithstanding our agreement with DOT's authority to terminate Paradyne's permit, as above stated, we nevertheless find it necessary to disapprove DOT's assertion of authority to order the utilization of portions of Paradyne's property in order to provide access to the adjoining landowner. While DOT has statutory and police power authority to revoke the present permit and require a safe redesign, barring which the access will be closed, it is clear that DOT cannot require implementation of the DSA design which affects Paradyne's private property. There was a total lack of evidence adduced at the hearing to demonstrate that either traffic congestion or safety hazards dictated any requirements regarding the design of Paradyne's private road other than its width on or near the right-of-way. Although DOT concluded otherwise, this conclusion has no evidentiary support in the record. No witness testified below that traffic congestion or safety hazards required a 250-foot joint use drive on Paradyne's private property. Without evidence relating the requirement of a 250-foot joint use driveway on Paradyne's property to the legitimate state purpose of promoting the safety of the traveling public, we agree with Paradyne that requiring it to provide a private roadway to promote the private interests of the adjoining property owners, M & B, constitutes an unconstitutional taking of Paradyne's property without due process of law. Nollan v. California *927 Coastal Commission, 483 U.S. ___, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). As in Nollan, this is a case in which the condition imposed by the state goes beyond mere restriction on the use of private property, and instead, requires actual invasion of Paradyne's private property by others.
In Nollan, the California Coastal Commission granted a permit to the Nollans to replace a small bungalow on their beachfront lot with a larger house upon the condition that they allow the public an easement to pass across their beach, which was located between two public beaches. The United States Supreme Court held that although the outright taking of an uncompensated, permanent public-access easement would violate the takings clause, conditioning appellants' rebuilding permit on their granting of such an easement would be lawful land use regulation if it substantially furthered governmental purposes that would justify denial of the permit. The government's power to forbid particular land uses in order to advance some legitimate police power purpose includes the power to condition such use upon some concession by the owner, even a concession of property rights, so long as the condition furthers the same governmental purpose advanced as justification for prohibiting the use. Nevertheless, the court concluded that the Commission's imposition of the access-easement condition in Nollan could not be treated as an exercise of land use regulation power since the condition did not serve the public purposes related to the permit requirement.
Accordingly, in the present case, DOT can condition its permit upon a concession by Paradyne of its property rights only so long as the condition furthers a public purpose related to the permit requirement  the elimination of undue disruption of traffic or the creation of safety hazards. The condition cannot be imposed simply to further the private interests of an abutting landowner. See the following cases cited by the Supreme Court in Nollan: Schwing v. Baton Rouge, 249 So.2d 304 (La. App.), application denied, 259 La. 770, 252 So.2d 667 (1971) (refusal to approve resubdivision unless subdivider included within map or plan a dedication of area sufficient to accommodate extension of street to the primary benefit of the public violated constitutional prohibition against taking private property for public use without due compensation); Howard County v. JJM, Inc., 301 Md. 256, 482 A.2d 908 (1984) (in order to exact from developer a setting aside of land for highway purposes there must be a reasonable nexus between the exaction and the proposed subdivision); and Simpson v. North Platte, 206 Neb. 240, 292 N.W.2d 297 (1980) (though city may require dedication of public areas, city cannot under guise of police power take private property for public use without just compensation). See also Hylton Enterprises v. Board of Supervisors, 220 Va. 435, 258 S.E.2d 577 (1979) (no authority, express or implied, for county to require developer to construct portions of route that abutted subdivision as a prerequisite to approval of subdivision plat). Conditioning the permit on a concession by Paradyne that it will build a 250-foot joint use drive on its property for the use and benefit of M & B does not further the safety of the traveling public, which is the ground for denial of the permit. Therefore, this condition cannot withstand constitutional scrutiny as it clearly amounts to a taking without just compensation.
We recognize, as a practical matter, that Paradyne may be unable to present a plan for redesign of the connection, acceptable to DOT, that will provide access for both Paradyne's and the adjoining property without at least some encroachment upon Paradyne's property by others. In that event, the alternative is termination of access for both properties. We simply hold here that DOT exceeded its authority in that portion of its order providing that the alternative to Paradyne's submission of a suitable design will be the imposition of DOT's design, the various configurations of which, with respect to Paradyne's property, have not been shown by evidence to be necessary to achieve any lawful purpose within the authority of DOT.
*928 In addition to the issues already addressed, Paradyne argued in its brief that DOT has no statutory authority to impose upon Paradyne the cost of improvements to Ulmerton necessitated by any redesign, nor to impose the cost of constructing a revised connection solely upon Paradyne when such changes will be of benefit to other landowners, notably M & B. However, the question of DOT's authority to impose the cost of improvement to a state highway on a private landowner and the question of the allocation of costs for improvements to a road connection benefitting more than one landowner were not addressed below nor was any evidence elicited regarding these issues. Accordingly, we will not address these issues for the first time on appeal. Upon remand, we direct the parties' attention to the following cases which may provide some guidance toward the resolution of these issues: Bethlehem Evangelical Lutheran Church v. Lakewood, 626 P.2d 668 (Colo. 1981); Aunt Hack Ridge Estates, Inc. v. Planning Commission, 160 Conn. 109, 273 A.2d 880 (1970); Lampton v. Pinaire, 610 S.W.2d 915 (Ky.App. 1980); Arrowhead Development Co. v. Livingston County Road Commission, 413 Mich. 505, 322 N.W.2d 702 (1982), reversing, 92 Mich. App. 31, 283 N.W.2d 865 (Mich. App. 1979); and Longridge Builders, Inc. v. Planning Bd. of Princeton, 52 N.J. 348, 245 A.2d 336 (1968).
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
NIMMONS, J., concurs.
ERVIN, J., specially concurs with written opinion.
ERVIN, Judge, specially concurring.
Although I generally agree with Judge Smith's thoughtful and well-reasoned opinion for the court, I am not sure that the intent of the DOT order was to require Paradyne to implement the DSA design affecting its private property. The majority approves, as do I, that portion of the order directing Paradyne to present to DOT within 60 days a design for a revised connection caused by the present safety hazards at the existing intersection. The majority, however, disapproves the following portion of DOT's order, which the majority views as requiring Paradyne to provide a roadway on its private property for the use and benefit of its adjoining landowners:
If within 60 days of the date of this order the Department has not issued a revised permit based on plans submitted by Paradyne, prior to the expiration of 90 days from the date of this order the Department shall issue a redesign permit for the Ulmerton Road intersection with the requirements that the driveway connection be modified by reconstruction using the Diaz-Seckinger design to provide for increased traffic and joint use of the intersection by the adjoining property owners and to accomodate [sic] proper traffic flow and eliminate safety hazards on the connector road.
If, on the other hand, the effect of this somewhat ambiguous language was simply to instruct Paradyne that the issuance of the redesign permit would be conditioned upon Paradyne's acquiescence with the DSA design, otherwise the permit would not be granted, I have no difficulty in affirming the order. The United States Supreme Court in Nollan v. California Coastal Commission, 483 U.S. ___, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677, 689 (1987), agreed with the California Coastal Commission that "a permit condition that serves the same legitimate police-power purpose as a refusal to issue the permit should not be found to be a taking if the refusal to issue the permit would not constitute a taking."
In the present case the majority holds that DOT can require as a condition to granting Paradyne access to the intersection that Paradyne submit a redesign of the connection, which would be shared by its neighbors. The majority further holds that if Paradyne fails to submit such a redesign, DOT has the concomitant right to deny the permit application. In my judgment DOT also has the authority to instruct Paradyne that if it fails to provide DOT with an *929 acceptable redesign of the connection within a specified period of time, DOT can then condition its approval of Paradyne's application for an access permit upon Paradyne's compliance with the DSA design, providing Paradyne's adjoining property owners a private roadway on its property for the purpose of allowing them a connection to the intersection, otherwise the application would be disallowed. Because, however, DOT's order can also reasonably be interpreted as directing Paradyne, after the expiration of the requisite 60 days, to submit unconditionally to the DSA design, thereby, for the reasons stated in the majority opinion, resulting in an unconstitutional taking of Paradyne's property, I concur with reversal and would remand the cause to the agency for the purpose of clarification.