THOMAS F. SIMPSON AND RUTH I. SIMPSON, APPELLANTS,
v. CITY OF NORTH PLATTE, LINCOLN COUNTY, NEBRASKA;
CARL E. BIEBER, MAYOR OF NORTH PLATTE;
R. L. GRADY, CITY CLERK OF NORTH PLATTE; GARY W.
RICKETT, BUILDING INSPECTOR OF NORTH PLATTE;
MARVIN P. HOMAN, ALAN ZOOK, BRUNO A. FONTANE,
LAWRENCE TIMMERMANS, DOUGLAS F. JOHNSON, JACK D.
ENGDAHL, FONCE BRYNOFF, AND ELMER SANDERS,
APPELLEES.
292 N. W. 2d 297

Filed May 13, 1980.   No. 42680.

Leonard P. Vyhnalek of McCarthy, McCarthy, &
Vyhnalek, for appellants.

Kay & Satterfield, for appellees.

Heard before KRIVOSHA, C. J., McCOWN, CLINTON,
BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This is an appeal from a judgment of the District Court for Lincoln County, Nebraska, finding the provisions of city ordinance No. 1962 of the City of North Platte, Lincoln County, Nebraska, valid and enforceable. Our examination of the record in this case and the law applicable thereto convinces us that the ordinance is in violation of the Nebraska Constitution and that, therefore, the judgment of the District Court must be reversed.

Presumably pursuant to the provisions of Neb. Rev. Stat. § 18-1721 (Reissue 1977), the City of North Platte adopted city ordinance No. 1962 which provided, in part, as follows:

> Section 1. In order to lessen congestion on the streets and to facilitate adequate provisions for community utilities and facilities such as transportation, no building or structure shall be erected or enlarged upon any lot in any zoning district, including the two mile zone, unless the half of the street adjacent to such lot has been dedicated to its comprehensive plan width.
>
> Section 2. That the maximum area of land required to be so dedicated shall not exceed twenty-five percent of the area of any such lot and the dedication shall not reduce such lot below a width of 50 feet or an area 5,000 square feet.

The ordinance further contains a section 3 which provides that applications for variances to the ordinance may be made and directed to the city clerk, who shall forward the same to the planning commission for recommendation to the city council. The variance, however, is not to be approved unless the North Platte city council, in passing on the application after recommendation from the planning commission, finds:

> (a) Strict application of the Subdivision Or-

dinance would produce undue hardship; (b) Such hardship is not shared generally by other properties in the same zoning district and the same vicinity; (c) The authorization of such variance will not be a substantial detriment to adjacent property and the character of the district will not be changed by the granting of the variance; (d) The granting of such variance is based upon reason of demonstrable and exceptional hardship as distinguished from variances for purposes of convenience, profit or caprice; and (e) The condition or situation of the property concerned or the intended use of the property is not of so general or reoccurring nature as to make reasonably practicable the formulation of a general amendment to the ordinance.

The plaintiffs, Thomas F. Simpson and Ruth I. Simpson, are the owners of a tract of land in North Platte, Lincoln County, Nebraska, more particularly located at the northeast quadrant of the intersection of South Jeffers Street where Leota Street "dead ends" into South Jeffers Street. The lot contains 36,900 square feet with a 205-foot front facing west on Jeffers Street and is 180 feet deep. The property in question is undeveloped.

In 1976, the Simpsons negotiated a lease with Colony Foods, Inc., for the purpose of constructing a fast-food restaurant known as "Hobo Joe's" on the real estate in question. Under the provisions of the lease, the Simpsons were to construct a building and provide suitable parking. The Simpsons made application to the City of North Platte for a building permit. The city planning department and engineering department refused to review the building plans and specifications on the ground that the 40-foot right-of-way for Leota Street had not been dedicated by the owners of the land. Because the Simp-

sons refused to deed the 40 feet to the City, it never issued a building permit. The Simpsons maintain that, by reason thereof, they lost their lease with Colony Foods, Inc.

The comprehensive plan of the City of North Platte contains a proposal to extend Leota Street east through the intersection of Jeffers Street along and through the south of the property owned by the Simpsons at Leota Parkway East, a major thoroughfare to connect from the western edge of U.S. Highway 83 to the new proposed U.S. Highway 83 bypass to Interstate 80. The evidence disclosed, however, that none of the real estate for Leota Parkway East has been acquired by the City nor is there any indication as to when, if ever, such real estate will be acquired by the City.

The City argues that the requirement of the ordinance adopted pursuant to statute is a reasonable exercise of the city's police power intended for the purpose of promoting the public health, safety, and welfare. In support of that position, the City cites a number of cases in which courts have generally held that a city may, as a condition of approving a subdivision, require the dedication of both internal streets and such external streets as are necessitated and required by reason of the development of the subdivision. While it is true that a city may, in the exercise of its proper police power in an appropriate situation, require the dedication of public areas, it is likewise true that a city may not, under the guise of the police power, take private property for public use without just compensation. In *City of Scottsbluff v. Winters Creek Canal Co.,* 155 Neb. 723, 733, 53 N.W.2d 543, 549 (1952), we cited 37 Am. Jur. *Municipal Corporations* § 286, which stated: "In the same way, property rights may not be arbitrarily interfered with or destroyed, or property taken without compensation, under the guise of municipal police regulations." Neb. Const. art. I, § 21, pro-

vides: "The property of no person shall be taken or damaged for public use without just compensation therefor." We must presume that the Constitution means exactly what it says. McQuillin, in his work on municipal corporations, clearly points out the distinction to be made between the proper exercise of the police power and the improper taking of private property, saying:

> In the exercise of the police power, public authority is empowered to require everyone so to use and enjoy his own property as not to interfere with the general welfare of the community in which he lives. To be valid, a restriction or prohibition imposed by government as to the use or enjoyment of property must be within the reason and principle of this individual duty, and if so the property owner must submit, without remedy, for any inconvenience or loss suffered by him. This is regulation, not a taking. Under the police power the public welfare is promoted by regulating and restricting the use and enjoyment of property by the owner, while under eminent domain, the public welfare is promoted by taking the property from the owner and appropriating to some particular use.

McQuillin, Municipal Corporations § 32.04 (3d. ed. 1977).

Likewise, in the case of *Commonwealth v. P. Coal Co.,* 232 Pa. 141, 149-50, 81 A. 148, 151 (1911), the court pointed out the distinction between eminent domain and the police power, saying:

> The police power is distinguished from the right of eminent domain in that the state, by exercising the latter right, takes private property for public use, thereby entitling the owner to compensation under the constitution, while the police power . . . is exerted . . . by regulating the use and enjoyment of

property by the owner, or, if he is deprived
of his property altogether, it is not taken for
public use, but rather destroyed in order to
conserve the safety, morals, health or
general welfare of the public, and in neither
case is the owner entitled to compensation,
for the law either regards his loss as dam-
num absque injuria, or considers him suffi-
ciently compensated by sharing in the gen-
eral . . . benefits resulting from the exercise
of the police power.

The distinction, therefore, which must be made
between an appropriate exercise of the police power
and an improper exercise of eminent domain is
whether the requirement has some reasonable rela-
tionship or nexus to the use to which the property is
being made or is merely being used as an excuse for
taking property simply because at that particular
moment the landowner is asking the city for some li-
cense or permit. This is best pointed out in the case
of *181 Incorporated v. The Salem Cty. Planning Bd.*,
133 N.J. Super. 350, 359, 336 A.2d 501, 506 (1975),
wherein the New Jersey court said:

In short, for the *nexus* test to apply, thus
making a compulsory dedication constitu-
tionally valid, the *nexus* must be *rational*.
This means it must be substantial, demon-
strably clear and present. It must definitely
appear that the proposed action by the de-
veloper will either forthwith or in the demon-
strably immediate future so burden the abut-
ting road, through increased traffic or other-
wise, as to require its accelerated improve-
ment. Such dedication must be for specific
and presently contemplated immediate im-
provements—not for the purpose of "banking"
the land for use in a projected but un-
scheduled possible future use.

(Emphasis in original). See, also, *Harris v. Salem*

*County Planning Bd.,* 123 N.J. Super. 304, 302 A.2d 552 (1973).

The rationale of the *181 Incorporated* case seems most appropriate herein. The evidence introduced at the time of trial established that, although the comprehensive plan indicated a proposed extension of Leota Street east of the intersection of existing Leota Street and Jeffers Street, no project was immediately contemplated whereby the street would be constructed nor is there any evidence regarding what the particular project would involve. Furthermore, there is no evidence to indicate that the construction of the project sought by Simpson would create such additional traffic as to require going forward with the proposed street project. As the evidence indicates, no other adjacent property owner would be required to dedicate any land for a public street unless a building permit is sought, nor would any other land now be acquired for a public street in the area. It is difficult, if not impossible, to see how this is anything more than a "land banking" operation which is clearly in violation of Neb. Const. art. I, § 21.

While it may be true that the comprehensive plan contemplates such development in the future, we have already declared that a comprehensive plan is nothing more than a guideline and is not binding. See *Copple v. City of Lincoln,* 202 Neb. 152, 274 N.W.2d 520 (1979). The defect with the ordinance may, perhaps, best be appreciated when one considers that, under this ordinance, if the Simpsons were simply asking for a building permit in order to add one more foot to the kitchen of his home located on property in North Platte, he would be required to dedicate 40 feet of his land for street purposes without compensation. In addition, when the balance of the street was acquired, if ever, by eminent domain, the Simpsons would likewise be required to pay taxes to provide the City of North Platte with suf-

ficient funds with which to pay damages to his neighbors. We fail to see how the holding of any of the cases authorizing a city to require dedication of public right-of-way caused by the development of a subdivision can be extended constitutionally to permit the action taken by the City of North Platte under the ordinance.

The fact that one may apply for a variance does nothing to cure the constitutional defect. In the first instance, the language of section 3 of the ordinance makes it clear that a variance may not be given except under the most severe and unusual circumstances, not found present in the instant case and not likely to be found in very many cases. The City argues that the Simpsons should not be heard until he has at least asked for the variance. We have, however, on numerous occasions held that one may not, on the one hand, seek the benefits of an ordinance or statute and, if unsuccessful, then seek to have it declared unconstitutional. *Alumni Control Board v. City of Lincoln,* 179 Neb. 194, 137 N.W.2d 800 (1965); *American Motors Sales Corp. v. Perkins,* 198 Neb. 97, 251 N.W.2d 727 (1977). The Simpsons were correct in refusing to seek a variance and, instead, testing the constitutionality of the ordinance.

The City likewise maintains that the ordinance was adopted pursuant to state statute, particularly § 18-1721. While the statute in question is not now before us, we see little reason why the rules announced today applicable to the ordinance would not likewise be applicable to the statute and would not likewise result in it being declared in violation of Neb. Const. art. I, § 21. There may be circumstances and instances where a city, in the exercise of the protection of the public welfare and in the exercise of its police power, may make reasonable requests upon property owners in connection with the development of their property. Those matters, however, are not before us today and we simply address ourselves to

the single issue presented. A city may not, under the guise of the police power, require a property owner to dedicate private property for some future public purpose as a condition of obtaining a building permit without paying the property owner just compensation, when the requested dedicated property is to be placed in a land bank for future use by the city and such future use is not directly occasioned by the construction sought to be permitted. As so presented in this case, we find that it does not pass constitutional muster and, therefore, must be declared invalid. Accordingly, we reverse the judgment of the District Court and remand the case for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

CLINTON, J., not voting.

BOSLAUGH, J., participating on briefs.