GLENN N. STROM, APPELLANT AND CROSS-APPELLEE, V. CITY OF OAKLAND, NEBRASKA, APPELLEE, AND LOWER ELKHORN NATURAL RESOURCES DISTRICT, APPELLEE AND CROSS-APPELLANT.

583 N.W. 2d 311

Filed August 21, 1998.    No. S-95-356.

Lawrence H. Yost, of Yost, Schafersman, Yost, Lamme, Hillis & Mitchell, P.C., for appellant.

Dennis J. Moynihan, of Johnson and Mock, for appellee City.

Dennis W. Collins and, on brief, Mark D. Fitzgerald, of Jewell, Gatz, Collins, Fitzgerald & DeLay, for appellee Lower Elkhorn NRD.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LIVINGSTON, D.J.

PER CURIAM.

Glenn N. Strom appeals from the district court order sustaining the respective motions for summary judgment of the City of Oakland (City) and the Lower Elkhorn Natural Resources

District (LENRD) with regard to Strom's allegations that the City and the LENRD effected a taking or damage to his property for a public use without paying just compensation. Because genuine issues of material fact are yet to be resolved with respect to Strom's action against the LENRD, the district court erred in granting summary judgment in favor of the LENRD, and thus, we reverse, and remand this cause for further proceedings. However, for the reasons that follow, we determine that Strom does not have standing to sue the City; therefore, we dismiss Strom's appeal with respect to the City for lack of jurisdiction.

## I. FACTS

Strom was ordered by the LENRD, pursuant to Nebraska's Erosion and Sediment Control Act, Neb. Rev. Stat. § 2-4601 et seq. (Reissue 1987 & Cum. Supp. 1990), to install terraces and construct a sediment and water control basin on his farmland. The City had initiated the action with the LENRD by filing a complaint in conformance with § 2-4608, alleging that sediment damage had occurred on its property and that the sediment originated from Strom's adjoining farmland.

In response to the City's complaint, Strom contended that the City caused the sediment problem by constructing a street through the natural drainageway of the land. Further, Strom claimed that the City's complaint to the LENRD sought to do through regulation that which the City should have done through the acquisition or condemnation of his property. In any event, Strom refused to comply with the LENRD's order.

Therefore, the LENRD, pursuant to § 2-4612, sought and, on April 14, 1993, received an order for immediate compliance from the district court. Strom has never consented to the LENRD's order. However, Strom has recognized the authority of the district court to compel compliance and, accordingly, installed the terraces and sediment retention basin. Pursuant to § 2-4610(2), the LENRD made available to Strom 90 percent cost-sharing assistance for the installation of the ordered conservation measures.

On April 20, 1993, Strom filed a petition against the LENRD and the City in the district court, claiming that the 10-percent cost not borne by the LENRD, the removal from agricultural

production of that portion of his land used in the construction of the sediment basin and the terraces, and the consequential diminution in value of the land have effected a governmental taking or damage to his land for a public use without the payment of just compensation. In response to Strom's petition, the City and the LENRD filed separate answers, and in February 1994, each entity filed a separate motion for summary judgment. On July 5, the district court overruled both motions.

Subsequently, the City and the LENRD filed separate amended answers, and in January 1995, each entity filed a separate motion for partial summary judgment on the issue of whether the action requiring Strom to alter his farmland was a valid exercise of the police power. On March 23, the district court, in one order, sustained the motions for summary judgment of both the City and the LENRD, and 5 days later, it dismissed Strom's petition. Strom timely appealed and successfully sought bypass to this court.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Marrs v. Keelan*, 254 Neb. 723, 578 N.W.2d 442 (1998). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## III. ASSIGNMENTS OF ERROR

Strom contends that the district court erred in sustaining the City's and the LENRD's motions for summary judgment and in dismissing his petition. Thus, the issue, as presented by Strom's assigned error, is whether a genuine issue of material fact exists as to whether the actions of the City or the LENRD constitute a governmental taking or damage to his property for public use without the payment of just compensation. The City and the LENRD argue that Strom's claim is barred by the doctrines of res judicata and collateral estoppel.

The LENRD cross-appeals, assigning that the district court erred in overruling its first motion for summary judgment, as the district court had before it at the time of the first motion all the evidence that it had at the time of the second motion and, therefore, should have granted summary judgment in its favor in the first instance.

## IV. ANALYSIS

Before we consider the merits of Strom's appeal, it is necessary for us to first dispose of the LENRD's cross-appeal and the procedural bar raised by the LENRD and the City in defense to Strom's claim.

### 1. LENRD's Cross-Appeal

First, the LENRD has cross-appealed from the district court's order overruling its first motion for summary judgment. Except when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore is not appealable. *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996). Thus, the LENRD's cross-appeal is without merit, as the denial of its first motion for summary judgment constitutes an interlocutory order and not a final, appealable order.

Second, the LENRD and the City argue that Strom is barred by the doctrines of res judicata and collateral estoppel from raising the issue of the payment of just compensation for a governmental taking or damage for public use because Strom could have raised the issue in the hearing before the district court wherein the court ordered Strom to comply with the LENRD's conservation plan. However, neither the LENRD's nor the City's motion for partial summary judgment in the instant case sought relief on the grounds of res judicata or collateral estoppel. Instead, both motions are based solely on the LENRD's and the City's claims that the LENRD's actions were a valid exercise of the police power conferred upon the LENRD by the statutes of the State of Nebraska. In sustaining the motions, the district court did not specify the grounds upon which the motions were sustained.

Even though the LENRD's amended answer raised the issue of collateral estoppel as a bar to Strom's action, the LENRD's motion for partial summary judgment, filed on January 26, 1995, specifically requested summary judgment "on the issue of whether the action of [the LENRD] requiring [Strom] to alter his real estate was a valid exercise of the police power conferred upon [the LENRD] by the Statutes of the State of Nebraska." In *Slagle v. J.P. Theisen & Sons*, 251 Neb. 904, 560 N.W.2d 758 (1997), a trial court granted the separate motions of the defendants for summary judgment in an automobile accident case based on (1) a statute exempting the defendants from liability and (2) a finding that the plaintiff was contributorily negligent in excess of 50 percent as a matter of law. In reversing the trial court's decision, we noted that neither defendant's motion for summary judgment requested a ruling by the trial court as to the plaintiff's alleged contributory negligence. We concluded that absent such a request in the motion for summary judgment, the trial court could not and should not have ruled on the issue of contributory negligence. *Id.*

Likewise, in the instant case, both the City and the LENRD specifically requested relief on the issue of whether the action requiring Strom to alter his farmland was a valid exercise of the police power. The district court did not specify any other grounds upon which the motions were sustained, and the record is silent as to the arguments that were made or the briefs that were filed in the lower court. Since the City and the LENRD requested relief based on specific grounds, and the record is otherwise silent, we have to assume that the trial court did not rule, and should not have ruled, on the issues of res judicata or collateral estoppel. See *id.* Although an appellate court is not precluded from raising the issue of res judicata sua sponte, we note that it is infrequently done, *Dakota Title v. World-Wide Steel Sys.*, 238 Neb. 519, 471 N.W.2d 430 (1991), and that there are not sufficient reasons to do so in the instant case. For this reason, and because issues not presented to or passed on by the trial court are ordinarily not appropriate for consideration on appeal, we decline to consider the res judicata or collateral estoppel issues in the present appeal.

## 2. EXERCISE OF POLICE POWER

In regard to the merits of Strom's appeal, both the City and the LENRD contend that the conservation measures imposed upon Strom are a proper exercise of the LENRD's police power to effect land-use regulations. Strom, on the other hand, asserts that the ordered conservation measures have taken or damaged his property for a public use, and thus, that the LENRD and the City must pay him just compensation.

Article I, § 21, of the Nebraska Constitution provides that the "property of no person shall be taken or damaged for public use without just compensation therefor." Further, the 5th Amendment to the U.S. Constitution, made applicable to the states through the 14th Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." See *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978), *rehearing denied* 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198.

Strom seeks damages in inverse condemnation from the City and the LENRD pursuant only to his state constitutional right. Nebraska's constitutional right to just compensation includes compensation for damages occasioned in the exercise of eminent domain and, therefore, is broader than the federal right, which is limited only to compensation for a taking. The words "or damaged" in Neb. Const. art. I, § 21, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998); *Pieper v. City of Scottsbluff*, 176 Neb. 561, 126 N.W.2d 865 (1964). "One whose property is damaged by the construction of a public improvement by the state or a subdivision thereof, has been damaged for a public use within the meaning of Article I, section 21, of the Constitution." *Baum v. County of Scotts Bluff*, 169 Neb. 816, 822, 101 N.W.2d 455, 461 (1960). Notwithstanding the difference between the federal and the state constitutions, this court has analyzed the state constitutional issue of whether there has been a regulatory taking or damage for a public use by treating federal constitutional case law and our state constitutional case law as coterminous. See, e.g., *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994).

Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings. *Lockard v. Nebraska Pub. Power Dist.*, 249 Neb. 971, 546 N.W.2d 824 (1996); *Whitehead Oil Co. v. City of Lincoln, supra.*

> The question of what constitutes a "taking" for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty. While this Court has recognized that the "Fifth Amendment's guarantee [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole," . . . this Court, quite simply, has been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons. . . .
>
> In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. . . . So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

(Citations omitted.) *Penn Central Transp. Co. v. New York City*, 438 U.S. at 123-24.

"[L]and-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.'" *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987), quoting *Agins v. Tiburon*, 447

U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980). See, also, *Whitehead Oil Co. v. City of Lincoln, supra.*

The distinction, therefore, which must be made between an appropriate exercise of the police power and an improper exercise of eminent domain is whether the requirement has some reasonable relationship or nexus to the use to which the property is being made or is merely being used as an excuse for taking property simply because at that particular moment the landowner is asking the city for some license or permit.

*Simpson v. City of North Platte,* 206 Neb. 240, 245, 292 N.W.2d 297, 301 (1980), *quoted in Dolan v. City of Tigard,* 512 U.S. 374, 398, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) (Stevens, J., dissenting) (referring to *Simpson*'s " 'reasonable relationship' " as " 'rough proportionality' ").

In other words, the distinction between the enforcement of a regulation which gives rise to an inverse condemnation suit and one in which the governmental entity is acting pursuant to its police power is that in the exercise of eminent domain, property or an easement therein is taken from the owner and applied to public use because the use or enjoyment of such property or easement is beneficial to the public. In contrast, in the exercise of police power, the owner is instead denied the unrestricted use or enjoyment of his property, or his property is taken from him, because his use or enjoyment of such property is injurious to the public welfare. See 1 Julius L. Sackman, Nichols on Eminent Domain § 1.42[2] (rev. 3d ed. 1998).

However, even if a government actor is regulating within proper police powers bounds, there are two discrete categories of regulatory actions that are compensable without a case-specific inquiry into the public interest and concomitant regulatory requirement nexus. One is where the regulation denies a landowner all economically beneficial or productive use of his or her land. See *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). The other is where the landowner suffers a physical invasion of his or her property. See *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982).

## (a) Strom's Claim Against LENRD

In regard to Strom's takings claim against the LENRD, the LENRD required Strom to install erosion and sediment control measures pursuant to its land-use regulatory authority provided for in the Erosion and Sediment Control Act. The act's statement of legislative findings, § 2-4602, recognizes that "erosion and sedimentation are serious problems throughout the state." The statement further provides:

> It is declared to be the policy of the state to strengthen and extend the present erosion and sediment control activities and programs of the state for both rural and urban lands . . . and to establish and implement, through the Director of Natural Resources and the Nebraska Natural Resources Commission, a statewide, comprehensive, and coordinated erosion and sediment control program to reduce damage from wind erosion and storm water runoff, to retard non-point pollution from sediment and related pollutants, and to conserve and protect land, air, and other resources of the state. This program shall be carried out by the natural resources districts in cooperation with the counties, municipalities, and other local governments and political subdivisions of the state and other public and private entities.

§ 2-4602.

Section 2-4610 of the act provides that the owner of the property is not required to install any ordered permanent soil and water conservation practices pursuant to the act unless he or she is afforded at least 90-percent cost-sharing assistance.

Recalling, land-use regulations are not, in effect, an exercise of the power of eminent domain if (1) the regulations substantially advance legitimate state interests and (2) do not deny an owner economically viable use of his land. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987).

Clearly, the protection of our soil resources is a legitimate state interest with which the LENRD is charged. The City filed a complaint with the LENRD, contending that sediment runoff in excess of that allowed by the LENRD was occurring onto its property from Strom's farmland. The LENRD investigated the complaint and determined that the sediment runoff from

Strom's land was nearly six times the LENRD's limit. The LENRD then ordered Strom to comply with conservation measures directed solely at ameliorating this sediment runoff condition. No doubt an essential nexus, or rough proportionality, exists between the legitimate state interest of erosion and sediment control and the land-use requirements imposed on Strom by the LENRD.

The remaining question is whether Strom has been denied economically viable use of his land. Strom does not claim that all economically beneficial or productive use of the land has been taken by the LENRD's actions. Thus, in this regard, this matter is not within one of the two narrow categories of regulatory takings cases in which it is unnecessary to engage in a case-specific inquiry into the public interest and concomitant regulatory requirement nexus. See *Lucas v. South Carolina Coastal Council, supra.*

In *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978), *rehearing denied* 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198, the U.S. Supreme Court, in engaging in what it termed essentially an ad hoc factual inquiry in this regard, examined three criteria: (1) the reasonable rate of return on an investment, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) whether the owner is able to continue to use the property affected in the same manner as before the imposition of the regulatory requirement. The Court concluded that the New York Landmarks Preservation Law did not effect a taking because it did not interfere with the present use of Grand Central Terminal and allowed Penn Central to obtain a reasonable rate of return on its investment.

Importantly, land-use regulations which substantially advance legitimate state interests do not effect a taking merely because the regulation caused a diminution in property value alone. *Id.* See, also, *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 15, 104 S. Ct. 2187, 81 L. Ed. 2d 1 (1984) ("impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking"). For example, in *Pace Resources, Inc. v. Shrewsbury Tp.*, 808 F.2d 1023 (3d Cir. 1987), *cert. denied* 482

U.S. 906, 107 S. Ct. 2482, 96 L. Ed. 2d 375, the plaintiff alleged that the rezoning of his 37 acres caused the value of his property to drop from $495,600 to $52,000. The court found this diminution in property value did not effect a taking.

> [A]lthough Pace may have been denied the *best* use or uses of its 37 acres, it has not been deprived of *all* economically viable uses of this property. Although there has been a substantial diminution in value, this property retains a substantial value that establishes the existence of residual economically feasible uses.

(Emphasis in original.) *Id.* at 1031.

In the instant case, Strom received 90 percent cost-sharing assistance from the LENRD for the installation of the ordered conservation measures. However, the record does not reflect the dollar amount of Strom's 10-percent share and the economic impact that this share might have on the economic viability of the continued use of his land. In his deposition, Strom states that only 4 acres of his 103-acre tract at issue have been put into terraces. However, Strom does not state how much of his land was devoted to the sediment or water retention basins. Strom did opine that based on purchase offers made for his land before and after the installation of the conservation measures, his land had suffered a diminution in value of $500 per acre, which represents approximately a one-third reduction in the value of his land.

Giving all reasonable inferences to Strom, as we are required to do on a motion for summary judgment, we conclude that genuine issues of material fact, or the ultimate inferences to be drawn, are yet to be resolved regarding whether Strom has been denied economically viable use of his land, due to the LENRD's imposition of conservation measures. Although the one-third diminution in fair market value alone, if true, would be insufficient to establish a regulatory taking or damages, we are unable to determine on the record before us, as a matter of law, whether the costs imposed on Strom by the LENRD's action have precluded a reasonable rate of return on his land or have destroyed any distinct investment-backed expectations. Accordingly, the district court erred when it sustained the LENRD's motion for summary judgment.

### (b) Strom's Claim Against City

Strom's appeal vis-a-vis the City, however, merits its own analysis. The City argues that even if we determine that genuine issues of material fact remain regarding Strom's inverse condemnation action against the LENRD, the district court did not have jurisdiction over the City because the City did nothing more than file a complaint pursuant to § 2-4608(1). That section provides that "[c]omplaints may· be filed by any owner or operator of land being damaged by sediment, [and] by any state agency or political subdivision whose roads or other public facilities are being damaged by sediment . . . ." § 2-4608(1). Thus, we are presented with the issue of whether Strom has the requisite standing to raise an action for inverse condemnation against the City.

Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue. *In re Complaints of McLeod Telemanagement et al.,* ante p. 202, 583 N.W.2d 39 (1998). Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. Because the requirement of standing is fundamental to a court's exercise of jurisdiction, a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *Id.* The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.*

In *Simpson v. City of North Platte,* 206 Neb. 240, 292 N.W.2d 297 (1980), the City of North Platte, by ordinance, required the property owner to dedicate certain private property to the city for use as a street as a condition for obtaining a building permit, without paying the property owner just compensation. The property owner in *Simpson* had standing to raise the inverse condemnation issue and seek to have the city's ordinance declared unconstitutional. However, in the instant case, it was the LENRD, rather than the City, which sought an order for Strom to set aside certain portions of his farmland for the installation of terraces and a sediment and water control basin pursuant to § 2-4612. The City was merely a reporting entity which had the right under the act to initiate the action with the LENRD

by filing a complaint in conformance with § 2-4608(1), alleging that sediment damage had occurred on its property and that the sediment originated from Strom's adjoining farmland. After the complaint was filed, it was the LENRD which was responsible for prosecuting the complaint by inspecting the complained-of erosion and seeking the order for Strom to take the necessary steps to eliminate the erosion. See §§ 2-4612 and 2-4613.

While the City has a significant interest in seeing that the sediment problem is eliminated, it was the LENRD and not the City which, in the instant case, sought the order for Strom to set aside portions of his farmland for the installation of conservation measures to control the sediment problem. Therefore, we conclude that Strom has standing to sue only the LENRD based on the inverse condemnation cause of action. Accordingly, since Strom has no standing to sue the City on an inverse condemnation theory, we dismiss Strom's appeal against the City for lack of jurisdiction.

## V. CONCLUSION

For the foregoing reasons, we determine that genuine issues of material fact are yet to be resolved with respect to Strom's action against the LENRD and that the district court erred in granting summary judgment in favor of the LENRD. Therefore, we reverse the judgment of the district court with respect to Strom's inverse condemnation action against the LENRD and remand that cause for further proceedings. However, because we determine that Strom does not have standing to sue the City on an inverse condemnation theory, we dismiss Strom's appeal with respect to the City for lack of jurisdiction.

APPEAL DISMISSED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.