IRENE R. BARGMANN AND DAVID R. BARGMANN ET AL.,
APPELLANTS, V. THE STATE OF NEBRASKA,
DEPARTMENT OF ROADS, AND THE CITY OF
COLUMBUS, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEES.

600 N.W. 2d 797

Filed October 1, 1999.    Nos. S-98-282 through S-98-289.

Warren R. Whitted, Jr., and Jennifer K. Woodward, of Lieben, Whitted, Houghton, Slowiaczek & Dougherty, P.C., for appellants.

Don Stenberg, Attorney General, and Jeffery T. Schroeder, for appellee State of Nebraska.

Stan A. Emerson and Matthew D. Dake, of Sipple, Hansen, Emerson & Schumacher, for appellee City of Columbus.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellants, Irene R. Bargmann and David R. Bargmann and seven other landowners, brought the instant consolidated actions against the County of Platte, Nebraska (County), and against the appellees, the Nebraska Department of Roads (State) and the City of Columbus, Nebraska (City). In their operative petition, the appellants allege that the appellees allowed the construction of obstructions within a flood plain which caused their land to become flooded and damaged. As a result, the appellants claim that their properties have been taken for public use without just compensation in violation of article I, § 21, of the Nebraska Constitution and the Fifth Amendment to the U.S. Constitution. The district court granted the City's motion for summary judgment and the State's motion for partial summary judgment. We affirm the portion of the order granting the City's

motion for summary judgment and dismiss the appeal against the State due to the lack of a final, appealable order.

## I. BACKGROUND

The appellants are a group of landowners in Platte County, Nebraska. The properties at issue are not within the City's corporate limits but are within the zoning jurisdiction of the City. In addition, the properties are located within the 100-year flood plain of the Loup and Platte Rivers. In March 1993, ice jams occurred on the Loup River near Columbus, Nebraska, forcing the river out of its banks. The floodwaters accumulated on the appellants' properties, causing damage. Following the flooding, the appellants filed a petition claiming that the appellees and the County allowed the construction of certain obstructions within the flood plain which caused the flooding of their properties to be much worse than it would have been had the obstructions not been built.

The alleged obstructions are the reconstruction of U.S. Highway 81 (highway) and the construction of a subdivision known as Whitetail Lake (subdivision). Both the highway and the subdivision are within 2 miles of the City and are within its zoning jurisdiction. The appellants allege that both the highway and the subdivision were constructed at an elevation in excess of the 100-year flood level and acted as a dam or levee which caused the floodwaters to accumulate on their properties.

The subdivision was built in the early 1980's. At that time, the City had in effect a flood plain ordinance requiring a permit from the City in order to engage in construction in the flood plain. The developers did not seek a permit under the ordinance. Instead, the developers obtained a permit from the State of Nebraska, Department of Water Resources (department). The record indicates that the department had authority to permit construction in the flood plain at the time the subdivision was constructed. However, an engineer who had been involved in flood plain studies of the area testified that the City could have stopped construction of the subdivision by refusing to grant a permit under its ordinance.

Following the issuance of the permit by the department, the City approved a special use permit issued to the developer to

extract dirt, gravel, and sand to create an internal lake within the subdivision. The first preliminary plat for the subdivision was approved by the city planning commission and the city council in the early 1980's. The city council, at various times, approved and accepted subdivision plats for each addition to the subdivision. There is no evidence that the State had any involvement in the construction of the subdivision. The State did not issue a permit regulating or authorizing construction of the subdivision, and the only record of permits issued by the State concerned permits for temporary access to a State right-of-way during the initial construction.

In February 1984, the City entered into a written agreement with the State regarding the highway construction. This agreement provided that "the construction or reconstruction of the aforesaid highway . . . shall be accomplished according to and in the manner provided by plans and specifications to be prepared by the State." The agreement provided that the City would share in financing that part of the project located within city limits. The City did not participate in the actual construction and did not select or supervise the construction contractor. Rather, the State selected and supervised the contractor.

The appellants allege that the actions of the County, the City, and the State constituted a taking of their properties for public use without just compensation under both the Nebraska and the U.S. Constitutions. In September 1997, the action against the County was dismissed with prejudice, and no appeal was taken. Thus, the County is not an appellee in this case. The City brought a motion for summary judgment, and the State brought a motion for partial summary judgment. The district court granted the State's motion for partial summary judgment to the extent that the State was not liable for any damage caused by the construction of the subdivision. On the same date, the district court granted the City's motion for summary judgment on the basis that any action of the City in "allowing" the construction of the subdivision could not constitute a taking as a matter of law. In addition, the district court determined that the City was not responsible for the design or construction of the highway project. The appellants filed this appeal, and the State filed a motion to dismiss based on a lack of jurisdiction.

## II. ASSIGNMENTS OF ERROR

The appellants assign that the district court erred in sustaining the City's motion for summary judgment and in granting the State's motion for partial summary judgment.

## III. STANDARD OF REVIEW

■ The determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its own conclusions independent from the trial court. *Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999).

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *NECO, Inc. v. Larry Price & Assocs., ante* p. 323, 597 N.W.2d 602 (1999); *Fackler v. Genetzky, ante* p. 130, 595 N.W.2d 884 (1999).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Schweitzer v. American Nat. Red Cross*, 256 Neb. 350, 591 N.W.2d 524 (1999); *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

## IV. ANALYSIS

### 1. JURISDICTION

The State contends we do not have jurisdiction because the appeal of the partial summary judgment is not a final, appealable order.

■ For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. Conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Charles Vrana & Son Constr. v. State*, 255 Neb. 845, 587 N.W.2d 543 (1998). An order is final if it affects a substantial right and (1) determines the action and prevents a judgment,

(2) is made during a special proceeding, or (3) is made on summary application in an action after judgment is rendered. *Charles Vrana & Son Constr. v. State, supra; O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

■ An order which effects a dismissal with respect to one of multiple defendants in a negligence action is a final, appealable order as to the party dismissed. *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997); *Green v. Village of Terrytown*, 188 Neb. 840, 199 N.W.2d 610 (1972). In the instant case, the granting of the City's motion for summary judgment dismissed the appellants' case against it. Thus, the order granting the City's motion for summary judgment is a final, appealable order even though there are issues left to be determined in the case that affect other parties. However, this leaves the question as to whether the partial summary judgment order granted to the State is a final, appealable order.

■ It is well settled that a partial summary judgment proceeding is not a special proceeding under part two of the above test. *Charles Vrana & Son Constr. v. State, supra.* For example, in *Charles Vrana & Son Constr.*, Vrana contracted with the Nebraska Department of Roads to perform a construction project and subsequently brought an action alleging that he was owed money from the State under the contract. The State counterclaimed, alleging that Vrana owed it money pursuant to both a liquidated damage provision and a disincentive provision in the contract. The district court granted Vrana's motion for partial summary judgment regarding the amount the State alleged Vrana owed under the disincentive provision, and the State appealed. We noted that the partial summary judgment proceeding was not made on summary application after judgment was rendered and that it did not determine the action and prevent a judgment because the order disposed of only one of the State's counterclaims and none of Vrana's claims. We also restated the rule that a partial summary judgment is not a special proceeding.

■ In reaching our decision in *Charles Vrana & Son Constr.*, we quoted language from *O'Connor v. Kaufman, supra*, stating that partial summary judgment " 'merely resolves one or several of the issues involved in the entire action or the "main case." ' " 255 Neb. at 848, 587 N.W.2d at 546. Although it is clear from

*Charles Vrana & Son Constr.* that partial summary judgment is not a special proceeding, *Charles Vrana & Son Constr.* does not stand for the proposition that an order granting partial summary judgment is never a final, appealable order. Rather, we have stated on several occasions, including a recently decided case, that where multiple causes of action are alleged, an entry of judgment on one cause of action is a final, appealable order with respect to that cause of action, despite the pendency of other causes of action in the same suit. *Fackler v. Genetzky, ante* p. 130, 595 N.W.2d 884 (1999); *Fitzke v. City of Hastings*, 255 Neb. 46, 582 N.W.2d 301 (1998).

The distinguishing factor between these cases and *Charles Vrana & Son Constr. v. State*, 255 Neb. 845, 587 N.W.2d 543 (1998), is that in *Charles Vrana & Son Constr.*, a distinct cause of action was not dismissed. Therefore, it was necessary in *Charles Vrana & Son Constr.* to consider whether the partial summary judgment was a special proceeding. However, when a distinct cause of action is dismissed, the order is final under the first part of the test as an order that affects a substantial right in an action and in effect determines the action and prevents a judgment. Thus, if the partial summary judgment order in the instant case acted to enter judgment on a distinct cause of action, we have jurisdiction to consider the partial summary judgment order on appeal. However, if the partial summary judgment acted to dismiss only a theory of recovery, there is not a final, appealable order. A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action. *Lewis v. Craig*, 236 Neb. 602, 463 N.W.2d 318 (1990). Thus, two or more claims in a petition arising out of the same operative facts and involving the same parties constitute separate legal theories, either of liability or damages, and not separate causes of action. *Id.* Whether more than one cause of action is stated depends mainly upon (1) whether more than one primary right or subject of controversy is presented, (2) whether recovery on one ground would bar recovery on the other, (3) whether the same evidence would support the different counts, and (4) whether separate actions could be maintained for separate relief. *Fackler v. Genetzky, supra*; *Fitzke v. City of Hastings, supra*.

In the instant case, the appellants pled one cause of action that shared a common set of facts and sought the same relief from the County and the appellees. Essentially, the appellants pled a variety of circumstances that allegedly acted to cause damage to their properties, the combined effect of which they alleged was a taking of their properties. Thus, the effect of the granting of the State's motion for partial summary judgment was not to dismiss a separate and distinct cause of action. Rather, it prevented the appellants from seeking recovery from the State for any damages caused by the construction of the subdivision, which was simply one factual element or alternate theory of damages pled in the appellants' single cause of action. Accordingly, the order granting the State's motion for partial summary judgment did not have the effect of dismissing a separate and distinct cause of action and is not a final, appealable order.

Of further interest but not directly applicable in this case is Neb. Rev. Stat. § 25-705(6) (Cum. Supp. 1998), effective July 15, 1998. Section 25-705(6) is the same as Fed. R. Civ. P. 54(b) and provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Although § 25-705(6) does not affect the instant case because the order appealed from was entered before the effective date of the statute, the statute simplifies the issue and clears up many of the questions regarding final orders when there are multiple parties and claims.

## 2. City's Motion for Summary Judgment

The appellants contend that the City's approval of the plat for the subdivision and its failure to enforce the ordinance requiring a permit prior to construction in the flood plain constituted a regulatory taking of their properties. The appellants also contend that the City's involvement with the subdivision and the highway project constituted a physical taking of their properties.

Article I, § 21, of the Nebraska Constitution provides that the "property of no person shall be taken or damaged for public use without just compensation therefor." The 5th Amendment to the U.S. Constitution, made applicable to the states through the 14th Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." See *Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311 (1998). Nebraska's constitutional right to just compensation includes compensation for damages occasioned in the exercise of eminent domain and, therefore, is broader than the federal right, which is limited only to compensation for a taking. *Id.*

### (a) Regulatory Taking

A review of case law shows that, generally, a regulatory taking occurs in the context of governmental regulation of the property allegedly taken. For example, a regulation may require that an owner change his or her property or that a particular use of the property be prohibited. See, e.g., *Strom v. City of Oakland, supra* (requirement that owner install erosion controls); *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994) (denial of property owner's request for permit). In this case, however, the appellants contend that it is the regulation of the subdivision, land that is owned by private third persons who are not parties to the action, that constitutes a taking. The district court referred to this as a "novel approach" and noted that it could find no authority to support the appellants' argument.

The appellants cite *Sheffet v. County of Los Angeles*, 3 Cal. App. 3d 720, 84 Cal. Rptr. 11 (1970), to support their contention that the approval of a subdivision plat can give rise to a finding that a regulatory taking occurred in the instant case. In *Sheffet*, the county was held liable in inverse condemnation for damages caused by an overflow of water onto the plaintiff's property

from public streets when the county had approved the subdivision and the drainage system. However, the county in *Sheffet* had done more than merely approve the subdivision plans. Rather, the county specifically accepted dedication of the streets, including specifically accepting liability for damages caused by the construction of the streets. Further, in *Ullery v. Contra Costa County*, 202 Cal. App. 3d 562, 248 Cal. Rptr. 727 (1988), the court specifically declined to extend *Sheffet* to allow a public entity to be held liable for inverse condemnation by virtue of the sole act of subdivision map approval. Accordingly, we find *Sheffet* to be unpersuasive. We agree with the district court that a regulatory taking could not have occurred under the facts presented in the instant case.

### (b) Physical Taking

The appellants next contend that the City's involvement with both the subdivision and the highway project constituted a physical taking of their properties. We have held that " '[o]ne whose property is damaged by the construction of a public improvement by the state or a subdivision thereof, has been damaged for a public use within the meaning of Article I, section 21, of the Constitution.' " *Strom v. City of Oakland*, 255 Neb. at 216, 583 N.W.2d at 316, quoting *Baum v. County of Scotts Bluff*, 169 Neb. 816, 101 N.W.2d 455 (1960). Thus, the issue is whether there is a question of fact regarding the City's involvement in constructing a public improvement that damaged the appellants' properties.

In *Steuben v. City of Lincoln*, 249 Neb. 270, 543 N.W.2d 161 (1996), homeowners sought compensation after water backed up against a railroad fill with a clogged culvert and flooded their property. The culvert was not owned, installed, or maintained by the city. However, the city had approved plats for development in the surrounding area. We stated that the homeowners had the burden of proving that the city's approval, development, and maintenance of the plats, a local park, and a golf course were the proximate cause of their damages. We then determined that there was no evidence that the city changed or altered a natural waterway, constructed a dam or embankment, or intentionally

directed water onto the homeowner's property. Thus, we held that the property was not taken by the city for a public purpose.

In the instant case, the only involvement of the City regarding the subdivision was the approval of plats and the issuance of a special use permit. The City was not involved in the construction, development, or maintenance of the subdivision. Rather, the construction, design, and maintenance were carried out by private, third parties. Likewise, the record shows no direct involvement of the City in the construction of the highway. Rather, the contract between the City and the State clearly states that the construction or reconstruction of the highway would be accomplished according to plans and specifications prepared by the State. There is no evidence that the City took part in any of the construction, design, or maintenance of the highway. Under these circumstances, we determine, as a matter of law, that the City has not taken the appellants' properties for a public purpose.

## V. CONCLUSION

Due to the lack of a final order, we do not have jurisdiction to consider the district court's action in sustaining the State's motion for partial summary judgment, and dismiss the appeal as to that party. The appellants have failed to provide evidence that the City took part in the construction, design, or maintenance of either the subdivision or the highway project. Thus, we affirm the portion of the district court's order granting the City's motion for summary judgment.

AFFIRMED IN PART, AND IN PART DISMISSED.