Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/08/2024 09:07 AM CDT

Hillsborough Homeowners Association, appellant,
v. Paul Karnish and Connie Karnish, appellees.

___ N.W.3d ___

Filed October 8, 2024.    No. A-23-836.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law.
2. **Actions: Parties: Jurisdiction: Standing.** The question of whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional, and because the requirement of standing is fundamental to a court's exercise of jurisdiction, either a litigant or a court can raise the question of standing at any time.
3. **Actions: Parties: Standing.** The purpose of an inquiry as to standing is to determine whether a party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.
4. **Standing: Jurisdiction.** Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.
5. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
6. **Standing: Claims: Parties.** In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties.
7. **____: ____: ____.** To have standing, the litigant must have some legal or equitable right, title, or interest in the subject of the controversy.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Appeal dismissed.

- 229 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
HILLSBOROUGH HOMEOWNERS ASSN. v. KARNISH
Cite as 33 Neb. App. 228

Aaron F. Smeall and Timothy J. Buckley, of Smith, Pauley, Slusky & Rogers, L.L.P., for appellant.

Thomas J. Anderson, P.C., L.L.O., for appellees.

Pirtle, Chief Judge, and Arterburn and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Hillsborough Homeowners Association (the Association) filed a complaint for injunctive and declaratory relief against Paul Karnish and Connie Karnish, seeking to enjoin them from operating a daycare in their home. The district court for Douglas County entered judgment in favor of the Karnishes, concluding that the Association had waived enforcement of the covenant on which it relied. We conclude that the Association did not have standing to bring an action against the Karnishes to enforce the covenants. Therefore, the Association's appeal is dismissed for lack of jurisdiction.

## BACKGROUND

The Karnishes own a lot with a residence built on it located in the Hillsborough subdivision in northwest Omaha, Nebraska. The lot is subject to the "Declaration of Covenants, Conditions, Restrictions and Easements of Hillsborough" (Declaration of Covenants). The Association is responsible for ensuring that all property owners in the subdivision comply with the covenants. By virtue of the Karnishes' ownership of real property within the subdivision, they are members of the Association and subject to the conditions and restrictions contained in the Declaration of Covenants.

The covenant at issue in this case provides in part: "No business activities of any kind whatsoever shall be conducted on any lot." The Karnishes acknowledge they were aware of the covenant prohibiting business activity being conducted on their lot at the time of their purchase in 2013. They have operated an in-home licensed daycare in their home continuously since 2013.

- 230 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
HILLSBOROUGH HOMEOWNERS ASSN. v. KARNISH
Cite as 33 Neb. App. 228

In September 2020, the Association filed a complaint against the Karnishes, seeking to enforce the covenant at issue and asking the court to order a permanent injunction that would enjoin them from operating the daycare business. The Karnishes filed an answer and affirmative defenses, including waiver of the Association's right to enforce the covenant at issue.

Trial was held in May 2021. The evidence presented showed that on June 15, 2013, Darcy Smith, a Hillsborough homeowner who lived next door to the Karnishes, sent an email to Darren Will, the president of the board of directors (Board) for the Association, stating that her new neighbors, the Karnishes, were planning on starting a daycare business in their home. She inquired in the email if that would be a violation of the covenants. That same day, Will responded to Smith's email, stating she could tell the Karnishes that their daycare had been reported to the Board and that action would be taken against them if they were to start a home daycare.

On June 18, 2013, Smith sent another email to Will, stating that she talked to the Karnishes again about the daycare and that they were planning to start operating the daycare that week.

On June 19, 2013, Will responded to Smith's second email, stating he would address the issue with the Karnishes. That same day, Will sent a letter to the Karnishes, on behalf of the Association, stating the covenant that was allegedly being violated and requesting that they relocate their daycare "no later than 15 days from the date of this letter." The letter further indicated that "[f]ailure to comply with this request [would] result in future interaction through legal representation." The Karnishes continued to operate their daycare.

Smith emailed Will again on October 22, 2013, stating that she and other neighbors still had concerns about the daycare the Karnishes were operating in their home. Smith also listed vehicles and license plate numbers she had observed coming and going from the Karnishes' home, as well as the times children were dropped off and picked up during the day.

- 231 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
HILLSBOROUGH HOMEOWNERS ASSN. v. KARNISH
Cite as 33 Neb. App. 228

On July 22, 2019, nearly 6 years later, Smith sent an email addressed to "Hillsborough Association Committee Members," asking the Association to shut down the Karnishes' daycare business. Diane Briggs, who became the Board president in 2016, received the email.

Briggs testified that after receiving Smith's July 2019 email, she followed up with Smith, who told her that the daycare had been operating since 2013 and that she had previously reported it to the Association.

Briggs also spoke with Will, who told her that he had spoken to the Karnishes about their daycare when he was the Board president and that he understood the issue had been "resolved," i.e., that the daycare had been closed. She also reviewed the Association records she had and did not find any complaints about the daycare between October 2013 and July 2019. Briggs stated there was no indication from the Association's perspective that the daycare continued to operate after October 2013.

Briggs testified that the Board sent a letter to the Karnishes, who responded, indicating that they wanted to have a meeting with someone on the Board. At the meeting, the Karnishes admitted they were operating a daycare in their home. Briggs testified that prior to the Karnishes' acknowledging the operation of the daycare, she did not have any personal knowledge that the daycare was operating. Following the conversation between Briggs and the Karnishes, the Karnishes did not cease operating the daycare.

Because the Karnishes continued to operate their daycare, in May 2020, the attorney for the Association sent a letter notifying the Karnishes that the daycare was in violation of the Declaration of Covenants and that if the violation continued, the Association would file legal action against them. The Association's attorney sent the same letter to the Karnishes in June. Ultimately, the Board decided to move forward with litigation and the present case was filed.

- 232 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
HILLSBOROUGH HOMEOWNERS ASSN. v. KARNISH
Cite as 33 Neb. App. 228

At trial, Paul testified that he moved into his home in Hillsborough in 2013 and started the daycare at that time. He stated that he and his wife, Connie, have been operating the daycare continuously since 2013.

He testified that he knew the covenants prohibited the operation of a daycare on his property before he closed on the purchase of his home. He also testified that before moving into his home in 2013, he learned that other individuals in the neighborhood had been running daycare businesses for years. Paul presented evidence of other daycare businesses operating in the neighborhood at the time of trial, as well as other types of businesses.

Paul acknowledged that he received a letter from the Association on June 19, 2013, notifying him that operating a business was a violation of the Declaration of Covenants. He testified that when he received the letter, he did not close the daycare business because he knew of three other daycares operating in the neighborhood. He did not talk to anyone from the Association about the letter. He decided to wait and see if any further action was taken by the Association. He received no further communication from the Association between 2013 and 2019. No complaints were made, as far as he was aware. He stated he had no evidence to suggest that the Association knew the daycare continued to operate beyond June 19, 2013, the date of the letter. However, he testified that between 2013 and 2019, he and Smith had arguments about the continued operation of the daycare.

Following trial, the trial court entered an order finding that the Association had waived its right to enforce the covenant at issue and entered judgment in favor of the Karnishes.

## ASSIGNMENTS OF ERROR

The Association assigns that the trial court erred in (1) denying its request for injunctive relief and (2) admitting evidence of other businesses that were operating out of residences located in the Hillsborough neighborhood.

- 233 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
HILLSBOROUGH HOMEOWNERS ASSN. v. KARNISH
Cite as 33 Neb. App. 228

## STANDARD OF REVIEW

[1] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law. *Zeiler v. Reifschneider*, 315 Neb. 880, 1 N.W.3d 880 (2024).

## ANALYSIS

The Association assigns the trial court erred in denying its request for injunctive relief and in admitting evidence of other businesses operating out of homes located in the Hillsborough neighborhood. However, we begin our analysis with the jurisdictional question of whether the Association had standing to bring an action for injunctive relief against the Karnishes.

[2,3] The question of whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional, and because the requirement of standing is fundamental to a court's exercise of jurisdiction, either a litigant or a court can raise the question of standing at any time. See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). The purpose of an inquiry as to standing is to determine whether a party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311 (1998).

[4,5] Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004). Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Id.*

[6,7] The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* In order to have standing, a litigant must assert

- 234 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
HILLSBOROUGH HOMEOWNERS ASSN. v. KARNISH
Cite as 33 Neb. App. 228

the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Id.* The litigant must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.*

The Declaration of Covenants at issue provides: "THIS DECLARATION . . . is made by MAPLE NORTH ENTERPRISES, INC., a Nebraska corporation, hereinafter referred to as the 'Declarant.'" Under "General Provisions," it states:

> Except for the authority and powers specifically granted to the Declarant, the Declarant or any owner of a Lot named herein shall have the right to enforce by a proceeding at law or in equity, all reservations, restrictions, conditions and covenants now or hereinafter imposed by the provisions of this Declaration either to prevent or restrain any violation or to recover damages or other dues of such violation.

Based on the plain language of the covenants, only the declarant and lot owners have the right to enforce a covenant by a proceeding at law or in equity. The present case was brought by the Association against the Karnishes. The Association is a Nebraska not-for-profit corporation established "for the purpose of promoting the health, safety, recreation, welfare and enjoyment of the residents of the Lots." There is nothing in the Declaration of Covenants to indicate that the Association is a lot owner.

We are mindful of the language under "General Provisions," which further states:

> Maple North Enterprises, Inc., a Nebraska corporation, or its successor or assign, may terminate its status as Declarant under this Declaration, at any time, by filing a Notice of Termination of Status as Declarant. Upon such filing, Association may appoint itself or another entity, association or individual to serve as Declarant, and such appointee shall thereafter serve as Declarant with the same authority and powers as the original Declarant.

This provision allows the declarant to terminate and appoint the Association or someone else to serve in its role as declarant, but there is nothing in our record which shows that a termination was ever filed or that the declarant was ever replaced. As such, the authority to enforce the covenants remains with the original declarant or lot owners, and the Association has failed to provide evidence of its standing to bring this claim against the Karnishes. Accordingly, we dismiss the Association's appeal for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, we conclude that the Association did not have standing to bring the present action against the Karnishes to enforce the covenants. We dismiss the Association's appeal for lack of jurisdiction.

APPEAL DISMISSED.